508 So.2d 330 (1987)
James D. CASTO, Petitioner,
v.
Donna L. CASTO, Respondent.
No. 66325.
Supreme Court of Florida.
June 4, 1987.
Rehearing Withdrawn June 30, 1987.
*331 DuBose Ausley, Timothy B. Elliott and Emily S. Waugh of Ausley, McMullen, McGehee, Carothers & Proctor, and Talbot D'Alemberte, Tallahassee, for petitioner.
S. Robert Zimmerman, Pompano Beach, Edna L. Caruso, West Palm Beach, and Joseph C. Jacobs of Ervin, Varn, Jacobs, *332 Odom & Kitchen, Tallahassee, for respondent.
OVERTON, Justice.
James D. Casto, the husband in a dissolution proceeding, petitions for review of Casto v. Casto, 458 So.2d 290 (Fla. 4th DCA 1982), affirming the trial court's setting aside of a property settlement agreement. We find apparent conflict with Cowen v. Cowen, 95 So.2d 584 (Fla. 1957), and Bubenik v. Bubenik, 392 So.2d 943 (Fla. 3d DCA 1980). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and address the requirements of postnuptial agreements in dissolution proceedings. In approving the district court decision, we reaffirm our prior decisions that competency of counsel is not a ground to vacate postnuptial agreements.
Petitioner and respondent were married in 1964. The marriage was dissolved in 1966, and the parties remarried in 1967. During the remarriage, the husband successfully developed shopping centers. The wife was not employed outside the home, and no children were born of the marriage. In 1977, the parties signed a postnuptial agreement. The agreement provided that: (1) the wife would receive the parties' Fort Lauderdale home and $100,000; (2) the husband would make the mortgage payments on the home for one year and pay for seawall repairs up to $5,000; (3) the wife would receive other incidental benefits, including health insurance, club memberships, and credit card memberships; (4) each party waived any right to alimony, support, or further distributions of property; (5) each party would continue ownership of any separately held assets; and (6) each party would pay his or her attorney fees in any forthcoming dissolution proceeding.
Approximately one year after the agreement's execution, the husband filed a dissolution petition and requested approval of the postnuptial agreement. The wife answered alleging invalidity of the agreement. She claimed that she executed the document because of duress and overreaching conduct, and that she was unfamiliar with the husband's assets and income at the time of the agreement. She counterclaimed for permanent and lump sum alimony, attorney's fees, and costs.
The record reflects the following evidentiary facts. First, the wife had some knowledge of dissolution proceedings, having been married three times prior to the two marriages to her husband in the instant case. Second, prior to execution of the agreement, she prepared a written list of her husband's properties and knew generally of her husband's business interests in shopping centers. Third, before signing the agreement, she discussed it with two attorneys. The wife provided the first attorney with a written list of the husband's assets, and, after reviewing the information, the attorney advised the wife not to sign the agreement. The second attorney counseled the wife on the form  not the content  of the agreement. Fourth, the husband did not advise the wife on the value of his assets. Fifth, the wife testified the husband told her that, unless she signed the agreement, she would lose the Fort Lauderdale house and furniture. Sixth, medical experts testified that the wife was deeply depressed the week before signing the agreement.
The trial court invalidated the separation agreement, stating:
The Court finds ... that the Separation and Property Settlement Agreement ... is invalid and is hereby set aside for the following reasons:
(a) That the Wife was not adequately advised of the Husband's assets and income prior to or at the time she signed the Separation and Property Settlement Agreement and had no independent knowledge of the extent of the Husband's assets and income.
(b) That the Wife did not have competent assistance of counsel at the time of the signing of said Separation and Property Settlement Agreement.
(c) That the Separation and Property Settlement Agreement ... is basically unfair and inequitable to the Wife.
The trial court awarded the wife lump sum alimony of $1.5 million to be paid in installments *333 over five years, with credits for the amounts already paid under the separation agreement. The district court affirmed the final judgment, holding:
There is competent evidence to support the appellant's contentions that the wife entered into the agreement freely and voluntarily, with independent advice, and with a general and approximate knowledge of the extent of the husband's net worth. However, there is also substantial competent evidence to support the trial judge's findings on these scores and, thus, for us to reverse this judgment on that basis would be the rankest form of appellate substitution of judgment.
458 So.2d at 292. In its decision, the district court quoted the above trial court findings. Id. at 291-92.
In this opinion, we will attempt to clarify the grounds on which a trial court may vacate or modify a postnuptial agreement in a final dissolution proceeding. Presently, some district court judges disagree on the principles for enforcing these agreements. See Hahn v. Hahn, 465 So.2d 1352 (Fla. 5th DCA 1985); O'Connor v. O'Connor, 435 So.2d 344 (Fla. 1st DCA 1983).
Postnuptial agreements regarding alimony and marital property are properly enforceable in dissolution proceedings. There are, however, two separate grounds by which either spouse may challenge such an agreement and have it vacated or modified.
First, a spouse may set aside or modify an agreement by establishing that it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching. Masilotti v. Masilotti, 158 Fla. 663, 29 So.2d 872 (1947); Hahn; O'Connor. See also Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962).
The second ground to vacate a settlement agreement contains multiple elements. Initially, the challenging spouse must establish that the agreement makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties. Del Vecchio, 143 So.2d at 20. To establish that an agreement is unreasonable, the challenging spouse must present evidence of the parties' relative situations, including their respective ages, health, education, and financial status. With this basic information, a trial court may determine that the agreement, on its face, does not adequately provide for the challenging spouse and, consequently, is unreasonable. In making this determination, the trial court must find that the agreement is "disproportionate to the means" of the defending spouse. Id. This finding requires some evidence in the record to establish a defending spouse's financial means. Additional evidence other than the basic financial information may be necessary to establish the unreasonableness of the agreement.
Once the claiming spouse establishes that the agreement is unreasonable, a presumption arises that there was either concealment by the defending spouse or a presumed lack of knowledge by the challenging spouse of the defending spouse's finances at the time the agreement was reached. The burden then shifts to the defending spouse, who may rebut these presumptions by showing that there was either (a) a full, frank disclosure to the challenging spouse by the defending spouse before the signing of the agreement relative to the value of all the marital property and the income of the parties, or (b) a general and approximate knowledge by the challenging spouse of the character and extent of the marital property sufficient to obtain a value by reasonable means, as well as a general knowledge of the income of the parties. The test in this regard is the adequacy of the challenging spouse's knowledge at the time of the agreement and whether the challenging spouse is prejudiced by the lack of information. Id. See Belcher v. Belcher, 271 So.2d 7 (Fla. 1972); Del Vecchio.[*]
*334 As reflected by the above principles, the fact that one party to the agreement apparently made a bad bargain is not a sufficient ground, by itself, to vacate or modify a settlement agreement. The critical test in determining the validity of marital agreements is whether there was fraud or overreaching on one side, or, assuming unreasonableness, whether the challenging spouse did not have adequate knowledge of the marital property and income of the parties at the time the agreement was reached. A bad fiscal bargain that appears unreasonable can be knowledgeably entered into for reasons other than insufficient knowledge of assets and income. There may be a desire to leave the marriage for reasons unrelated to the parties' fiscal position. If an agreement that is unreasonable is freely entered into, it is enforceable. Courts, however, must recognize that parties to a marriage are not dealing at arm's length, and, consequently, trial judges must carefully examine the circumstances to determine the validity of these agreements.
We now apply these principles to the instant case. Although the wife alleged that she signed the agreement under duress, alleging a basis under the first means to set aside a postnuptial agreement, the trial court made no specific finding on this claim. The trial court did find, under the second ground, that the agreement was unfair and inequitable and that the wife "had no independent knowledge of the extent of the Husband's assets and income." Casto, 458 So.2d at 291. There was evidence to support both of these findings. Viewed most favorably to the wife, the record reflects that she received $225,000 in exchange for claims against the assets of her husband which were estimated to be worth as much as $10 million. The contention that the wife knew the character and extent of the husband's assets stems from the fact that when the settlement agreement was being discussed, the wife made out a handwritten list of all assets in which she thought her husband might have an ownership interest. Essentially, the list simply referred to names of towns in which her husband had an interest in shopping centers and general references to such matters as "large sum of stock in Wendy's Hamburger," "a large sum of gold bars," and "horses and breeding horses from Illinois with Charles Wendell." There was no indication that she had any idea of the value of these interests, the amount of any mortgages thereon, or the income derived therefrom. Moreover, she did not know the extent of her husband's ownership interest in these centers since he operated most, if not all, of them in partnership with others.
We are concerned about the trial court's finding as a ground to vacate the agreement that the wife "did not have competent assistance of counsel." This is an erroneous basis for setting aside the agreement. This Court has expressly held that incompetent legal advice is not a basis to vacate an agreement in a dissolution proceeding. Cowen (wife consulted with two attorneys and then alleged she did not have competent counsel). See also Bubenik.
To hold that competent counsel is essential for a valid property settlement agreement is inconsistent with our prior holding that a complaining spouse need not have legal counsel for a valid agreement. Del Vecchio; Cowen. Furthermore, had the trial judge not included the finding concerning "competent assistance of counsel" as one of the reasons for his conclusion that the agreement should be vacated," there would be no problem. Clearly, if the wife knowingly insisted upon signing the agreement in the face of legal advice to the contrary, without being affected by duress, she ought not later be permitted to repudiate the agreement. The wife's real claim in this proceeding was not competency of counsel, but the circumstances under which she executed the agreement. We believe the trial judge, by his finding, was only conveying his view that the oppressive and threatening conduct of the husband negated the legal advice she received. The record supports this conclusion. The first lawyer consulted by the wife told her that her handwritten list was insufficient to furnish the financial data he needed to advise her. However, the husband told the wife *335 that he would never give her a financial statement. He threatened she had better find a lawyer who would let her sign the agreement or he would blow up the house and throw Clorox all over her clothes. Pursuant to her husband's insistence that she find a "pro forma" attorney, she briefly consulted a lawyer not experienced in domestic relations. This lawyer testified that he had not been hired to determine whether the agreement was reasonable and fair, but simply to see that the contract was in proper legal form. He admitted that there was no discussion of the husband's finances and testified that in retrospect he felt he had been "set up." He said that if he had known the husband was wealthy or that the husband had made the wife fire her prior attorney, he would not have told her that it was all right to sign the agreement. We do not find that the trial court actually determined that incompetent legal advice was the basis to vacate this agreement; rather, he found the conduct of the husband caused the wife to involuntarily enter into the agreement.
We were concerned that the district court opinion could be construed to approve the use of competency of counsel as a ground to vacate a postnuptial agreement. The record does not support that conclusion either from the trial court or from the district court of appeal. Having resolved that apparent conflict, we approve the opinion of the district court of appeal in accordance with our interpretation of that decision.
It is so ordered.
McDONALD, C.J., and SHAW and GRIMES, JJ., concur.
ADKINS, J. (Ret.), concurs in result only.
EHRLICH, J., dissents.
NOTES
[*] The standards set forth for antenuptial agreements in Del Vecchio were subsequently approved for postnuptial agreements in Belcher.