517 So.2d 53 (1987)
Judith Carol BRIGHTON, Appellant,
v.
Elvin L. BRIGHTON, Appellee.
No. 87-0758.
District Court of Appeal of Florida, Fourth District.
December 9, 1987.
Rehearing Denied January 22, 1988.
*54 William I. Zimmerman of William I. Zimmerman, P.A., Pompano Beach, and Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Fort Lauderdale, for appellant.
Harry G. Carratt of Morgan, Carratt and O'Connor, P.A., Fort Lauderdale, for appellee.
GUNTHER, Judge.
We reverse the trial court's order setting aside the separation and property settlement agreement, granting the former husband's motion for modification, and denying the former wife's motions for contempt, enforcement and attorney's fees.
The parties were married in 1962, separated in 1983, and divorced in May of 1984. Two children were born of the marriage. The 23-year-old dependent child, Mark, presently resides in the former marital home with his mother because he is paralyzed on one side, confined to a wheelchair and requires 24 hour-a-day care as a result of a malignant brain tumor. Sean, the 19-year-old son, also lives at home and assists his mother in caring for Mark.
During the marriage, the wife's primary occupation was that of wife and mother. However, she did work as a realtor for two or three years before Mark's illness was diagnosed in 1980. From 1980 until the present she has remained at home to care for Mark.
After the parties separated, they negotiated their own property settlement agreement without the assistance of a lawyer. The wife then took this agreement to an attorney who redrafted it in proper legal form and had it typed.
The husband testified that the typewritten version of the agreement, which was incorporated by reference in the final judgment, was substantially the same as the one the parties negotiated, that he understood its contents, that he and his wife were equal in ability to understand finances, and that he was not snookered or tricked into signing the agreement. According to the husband's testimony, he wanted out; he wanted away from her; he wanted it over; he was willing to pay anything to extricate himself from the marital situation at that time.
During the marriage, the husband had always worked extra jobs and continued to do so after the divorce. In fact, he complied with the financial terms of the agreement and even exceeded them until October of 1986 when his new wife learned of his affair with the appellant, his ex-wife. The new wife had been supporting the husband since before and after their marriage in June of 1984, but she was shocked to learn of the affair and that he had been taking money from her to give to the appellant. It is at this point that the husband stopped paying the wife in accordance with the financial terms of their agreement.
When the husband entered into the agreement in dispute, he was employed as an air traffic controller and had a second job performing boat maintenance. Subsequently, he undertook additional jobs until July of 1986 when he was diagnosed as having blood pressure above the limits allowable for an air traffic controller. Pursuant to the doctor's suggestion, the husband gave up his third job, lost weight, stopped smoking and reduced his intake of alcohol, caffeine and salt. He was also advised to rearrange his life to a more normal style. In any event, the husband's blood pressure was within limits in less than a month.
On the modification issue, the husband admits that he has the same employment and that his income is basically the same as it was when he and his former wife negotiated the settlement. At the time the agreement was executed, the husband agreed that as long as the wife and children resided in the marital home he would pay for the following family living expenses: home mortgage, real estate taxes and insurance; utilities including water, electric, phone, and cable T.V.; newspaper; exterminators; pool and spa maintenance and repairs; health insurance for the wife and children; uninsured medical and dental expenses of the wife and children; credit card purchases of the wife including but not limited to necessities such as clothing, household items, and gasoline; car payments for the *55 wife's automobile including maintenance, gasoline, insurance, license tags, and purchase payments; food and household goods including but not limited to syrup and gas for the coke machine; household and appliance maintenance and repair; miscellaneous personal expenses including but not limited to haircuts, beauty parlor, veterinarian and kennel expenses, entertainment for the wife and children, lunches, gifts and cards, and other reasonable personal expenses.
Presently the wife and two children are still residing in the former marital home. According to the wife's financial affidavit, the family support expenses now total approximately $4,385.00 a month. The husband did not dispute this figure nor did he introduce any evidence to establish that the family's financial needs had decreased since the execution of the agreement. Although the husband was forced to quit a third job for health reasons, he failed to establish that this loss of a third income substantially decreased his income from what it was at the time of the execution of the agreement.
While a trial court does have the right to reduce alimony and support provisions of a property settlement agreement upon a showing of substantial change in circumstances of either party pursuant to section 61.14, Florida Statutes (1985), we hold that such a change was not shown in the instant case. The record does not contain substantial competent evidence to support the trial court's finding that "there has been a substantial change in circumstances, which is significant, material, involuntary, and permanent in nature, because of the husband's health problems, the diminution in his income, etc." See Smith v. Smith, 399 So.2d 1116 (Fla. 4th DCA 1981); Brown v. Brown, 472 So.2d 873 (Fla. 2d DCA 1985). It is clear from the record that the husband's brief bout with high blood pressure has not caused his financial situation to be substantially changed to the extent that he can be relieved of his financial obligations under the property settlement agreement. Therefore, we conclude that the trial court erred in modifying the agreement.
We also conclude that the trial court erred in ruling that "the separation and property settlement agreement incorporated in the final judgment is facially unfair, is unconscionable, and should not be enforced." At the time the trial court made its ruling, it did not have the benefit of Casto v. Casto, 508 So.2d 330 (Fla. 1987), which clarifies the grounds on which a trial court may vacate or modify a postnuptial agreement in a final dissolution proceeding. Although the instant case arose from a post dissolution proceeding, the reasoning of Casto gives guidance as to what grounds either spouse may use to challenge a property settlement agreement.
According to Casto, there are two separate grounds to challenge a property settlement agreement. First, a spouse can have an agreement set aside or modified by proving fraud or overreaching by the other party. Or, the spouse can prove that the agreement makes an unfair or unreasonable provision for that spouse, given the parties' circumstances. Once unreasonableness is shown, then the defending spouse can rebut the presumption of unreasonableness by showing that the challenging spouse had adequate knowledge of the marital property and income of the parties at the time the agreement was reached.
The critical test, as set forth in Casto, to determine the validity of marital agreements is whether there was fraud or overreaching on one side, or assuming unreasonableness, whether the challenging spouse did not have adequate knowledge of the marital property and income of the parties at the time the agreement was reached. 508 So.2d at 334. In the instant case, the husband does not contend that there was fraud or overreaching by his wife, but he maintains that the agreement is unconscionable and unfair. However, the wife established by substantial competent evidence that the husband did in fact have adequate knowledge of the marital property and income at the time the agreement was reached. Thus, even assuming unreasonableness, the husband's adequate *56 knowledge of the marital property and income defeats his attempt to set aside the agreement on the grounds that it is unreasonable. As the court said in Casto:
A bad fiscal bargain that appears unreasonable can be knowledgeably entered into for reasons other than insufficient knowledge of assets and income. There may be a desire to leave the marriage for reasons unrelated to the parties' fiscal position. If an agreement that is unreasonable is freely entered into, it is enforceable.
508 So.2d at 334.
We also disagree with the husband's contention that the provision for family support is unconscionable. The extraordinary and tragic circumstances of this case create an almost unsolvable financial dilemma at this time in the lives of these people. Although the husband is presently giving his former family almost his entire income, this situation is self-limiting by his son's health. Therefore, in light of the tragic and particular facts of this case, we conclude that the trial court abused its discretion in setting aside the property settlement agreement because the record does not support a finding the agreement is unconscionable.
Since we hold that the provision of the Brighton property settlement agreement governing family support is not subject to being vacated or modified at this time, we decline to address the issue of the timeliness of the husband's motion for modification.
In view of the relative financial positions of the parties, it was an abuse of discretion to refuse to award the wife a reasonable attorney's fee and costs for defending the proceeding necessitated by her husband's actions in unilaterally reducing the agreed upon family support. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
We reverse and remand for further proceedings consistent with the opinion.
ANSTEAD, J., concurs specially with opinion.
LETTS, J., dissents without opinion.
ANSTEAD, Judge, concurring specially.
I concur in the majority opinion because I believe the legal analysis set out therein is correct, but I am troubled by the enforcement of a marital settlement agreement that approaches unconscionability if you accept the appellee's version of the facts, as the trial court apparently did. My chief concern, however, is that the agreement is patently ambiguous in that its provisions for "temporary support" (literally the heading appearing in the agreement) are being enforced as permanent standards. These provisions, combined with the other provisions for alimony and child support, create considerable doubt in my mind as to the intentions of the parties. Notwithstanding my concerns, the issue of ambiguity or intent of the parties was not raised below and is not discussed on appeal.