PER CURIAM.
The appellant, Jack Tanner [Mr. Tanner], appeals an order validating a postnuptial agreement with his wife, Betty Wyle Tanner [Mrs. Tanner], discontinuing his financial support from Mrs. Tanner’s guardianship estate and directing the sale of Mrs. Tanner’s residence. We affirm. Mrs. Tanner’s daughter from a previous marriage, Rita Jannis [Mrs. Jannis], cross-appeals from the same order denying her claim for the restoration of funds in two bank accounts deposited at Chase Federal which she contends Mr. Tanner misappropriated from the guardianship estate. We affirm.
Mrs. Tanner was declared incompetent on January 5, 1985. Mr. Tanner was appointed guardian of her person and Barnett Banks Trust Company, N.A. [Barnett or the bank] was appointed guardian of the property. From mid-1985 through mid-1987, Mr. Tanner, Mrs. Jannis and Mrs. Tanner’s other daughter from her first marriage, Sheila Wyle [Ms. Wyle], had several disputes concerning the guardianship of Mrs. Tanner. The various disputes were consolidated and the matter was tried on April 29, 1987, May 1, 1987 and May 8, 1987. The trial judge entered an order on May 28, 1987, setting aside the postnuptial agreement, reducing Mr. Tanner’s financial support from $1,000.00 per month to $500.00 per month, directing the sale of Mrs. Tanner’s residence, and finding that the funds in the Chase Federal accounts were Mr. Tanner’s separate property. On appeal, this court vacated and remanded that order on the ground that the trial court lacked jurisdiction to entertain the claims without the appointment of a guardian ad litem to represent the guardianship estate. See Jannis v. Tanner, 533 So.2d 300 (Fla. 3d DCA 1988).
On remand, the trial court appointed a guardian ad litem. After a status conference, the trial court entered an order on status conference on June 5, 1989, setting forth five issues that were ripe for adjudication. Thereafter, the parties submitted trial briefs on those issues. After oral argument, the trial court entered an order on stipulated issues on September 27, 1989. The court held: (1) the postnuptial agreement that Mr. and Mrs. Tanner entered into on March 13, 1978 is valid, enforceable and unambiguous, and became effective upon its execution; (2) Mr. Tanner is not entitled to further financial support from the guardianship estate of Mrs. Tanner; (3) Mrs. Tanner’s residence may be sold, notwithstanding Mr. Tanner’s refusal to join in the conveyance; (4) Mr. Tanner is not required to restore to the guardianship of Mrs. Tanner the funds which were on deposit in Chase Federal accounts on November 6, 1984; and (5) Mr. Tanner is retained in his position as the guardian of the person of Mrs. Tanner. The trial court further provided that following the sale of Mrs. Tanner’s residence, Mr. Tanner may petition the court for financial support from the guardianship estate of Mrs. Tanner and may petition the court for the valuation and apportionment of his claimed life estate in the net remaining proceeds of the sale, if any, after Mrs. Tanner’s needs have been met. Both Mr. Tanner and Mrs. Jannis appealed.
On January 19, 1990, the trial court granted Mrs. Jannis’ petition and removed Mr. Tanner as guardian of Mrs. Tanner’s person. Mr. Tanner appealed to this court contending that the trial court lacked juris *182 diction to change its September 27, 1989 order. This court denied Mr. Tanner’s motion.
On this appeal Mr. Tanner contends that the postnuptial agreement was unreasonable, unfair, overreaching, and designed to deprive him of the use of assets that he had worked to accumulate during the marriage. Therefore, Mr. Tanner argues that the agreement should be set aside. We disagree.
We find that the postnuptial agreement satisfied the criteria established in Casio v. Casto, 508 So.2d 330 (Fla.1987) (postnuptial agreement may be set aside or modified upon determination that it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching). At all times during the preparation of the postnuptial agreement, Mr. Tanner was represented by independent counsel. Further, incorporated into the agreement were the detailed separate financial statements of the parties, which were signed by both of them. Mrs. Tanner made a full disclosure of the value of her assets and property to Mr. Tanner. Therefore, the evidence presented at trial conclusively established that the agreement had not been the product of fraud or overreaching. It appears that Mr. Tanner is trying to rectify what he now considers to have been a bad bargain. However, as the Casto court stated: “[T]he fact that one party to the agreement apparently made a bad bargain is not a sufficient ground, by itself, to vacate or modify a settlement agreement.” Casto, 508 So.2d at 334.
The challenging spouse can also vacate an agreement by establishing that the agreement makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties. Casto, 508 So.2d at 333. In the present case, the agreement, together with Mrs. Tanner’s revised will, afforded Mr. Tanner a larger inheritance from his wife than he would have received under Mrs. Tanner’s previous will. In addition, by signing the agreement, Mrs. Tanner relinquished her statutory right to elect against her husband’s estate, thereby preserving for Mr. Tanner’s heirs undiminished rights of inheritance. Therefore, the agreement was not unreasonable. Consequently, the trial court properly determined that the agreement is valid, enforceable and unambiguous, and became effective upon its execution.
Mr. Tanner next contends that the trial court erred in determining that he was not entitled to receive monthly financial support from his wife’s guardianship estate. We disagree. In the postnuptial agreement, Mr. Tanner irrevocably relinquished his right to receive financial support from his wife or her property.[1]
Even if Mr. Tanner had not relinquished his right to receive financial support, at trial he failed to satisfy the criteria of Sections 744.397 and 744.421, Florida Statutes (1987).[2] Mr. Tanner cannot qualify as *183 the indigent husband of the ward under Section 744.397(2), Florida Statutes (1987). At the time of trial, he possessed approximately $63,000.00 in savings and received Social Security and military disability benefits. Mr. Tanner himself testified that for many years he had provided financial assistance to his mistress from his own resources. He cannot now turn around and claim he is destitute. Mr. Tanner is also not demonstrably dependent upon his wife for support, as contemplated by Section 744.421, Florida Statutes (1987). His savings and pension income will enable him to continue to provide for himself. The trial court’s order follows the legislature’s direction to fully consider Mrs. Tanner’s needs before it considers the claims of her spouse or dependents. If subsequent events enable the guardianship estate to fully meet the needs of Mrs. Tanner, then Mr. Tanner is entitled to petition the court for support. In light of the evidence presented, the trial court properly found that Mr. Tanner was not entitled to any support from his wife’s guardianship estate.
Further, Mr. Tanner contends that the trial court erred when it ordered that Mrs. Tanner’s residence be sold notwithstanding his refusal to join in a conveyance. We disagree. As a result of the postnuptial agreement, Mr. Tanner irrevocably' relinquished his right to claim a homestead interest in his wife’s real property. This provision in the postnuptial agreement, in effect, created a release or alienation of Mr. Tanner’s homestead rights. See In re Estate of Skuro, 487 So.2d 1065 (Fla.1986) (homestead status continues until it is abandoned or alienated in the manner provided by law); see also, City Nat’l Bank of Fla. v. Tescher, 557 So.2d 615 (Fla. 3d DCA 1990). Thus, having relinquished any homestead rights that he may have had, Mr. Tanner’s refusal to join in the conveyance of Mrs. Tanner’s property cannot affect an otherwise proper sale of the property.
In addition, Mrs. Tanner’s adjudicated incapacity empowered Barnett, with the court’s authorization, to sell Mrs. Tanner’s residence notwithstanding Mr. Tanner’s refusal to join in a conveyance. See Art. X, § 4(c), Fla. Const.; § 744.441, Fla.Stat. (1987). Accordingly, the trial court properly directed Barnett to sell Mrs. Tanner’s residence.
Mrs. Jannis cross-appeals and contends that the trial court erred when it refused to order that the funds on deposit in the Chase Federal accounts be restored to Mrs. Tanner’s guardianship estate. We disagree. A trial court may find the existence of joint ownership rebutted where strong evidence is presented of a contrary intent. Constance v. Constance, 366 So.2d 804, 807 (Fla. 3d DCA 1979). There was sufficient evidence before the court to determine that Mr. Tanner was the true owner of the money in the joint bank accounts opened with Mrs. Tanner at Chase Federal. The record fully supports the trial judge’s findings that the funds belonged exclusively to Mr. Tanner. See Hamilton v. Trapp, 392 So.2d 1001 (Fla. 4th DCA 1981); In re *184 Guardianship of Williams, 313 So.2d 411 (Fla. 1st DCA 1975). Mrs. Tanner’s incompetence should have no effect on Mr. Tanner’s ability to withdraw his funds or to do with his money as he chooses. Accordingly, the judgment appealed from is affirmed.
Affirmed.

. The postnuptial agreement provides in pertinent part:
1. ... JACK TANNER does hereby disclaim and release to BETTY WYLE TANNER or her heirs, legal representatives, assigns, legatees, devisees, any and every right, claim and estate, which he might or shall have, hold or acquire in, to or upon any of the said property of BETTY WYLE TANNER by reason of said marriage and by reason of being or having been the spouse of BETTY WYLE TANNER.
******
4. JACK TANNER, in consideration of the premises herein contained, hereby relinquishes all rights of elective share, homestead, award of allowance of all other right, title and interest, distributive or otherwise, that he ordinarily would acquire or which would accrue to him in the state of BETTY WYLE TANNER upon her death by virtue of the laws of descent, or otherwise, except such provisions as are herein specifically made and contained, and such other provisions, if any, as BETTY WYLE TANNER may make and provide for him in her Last Will and Testament.

. Section 744.397, Florida Statutes (1987) provides in pertinent part:
(1) The court may authorize the guardian of the property to apply the income from the ward’s property, first to his care, support, education, and maintenance, and then for the care, support, education, maintenance, cost of final illness, and cost of funeral and burial or cremation of the parent, spouse, or dependents, if any, of the ward, to the extent necessary. If the income is not sufficient for these purposes, the court may authorize the expenditure of part of the principal for such purposes from time to time.
*183 (2) The word “dependents", as used in subsection (1) means, in addition to those persons who are legal dependents of a ward under existing law, the person or persons whom the ward is morally or equitably obligated to aid, assist, maintain, or care for, including, but not limited to, such persons as the indigent husband of the ward, based upon the showing of an existing need and an ability of the estate of the ward to pay for, provide, or furnish the aid, assistance, maintenance, or care without unreasonably jeopardizing the care, support, and maintenance of the ward.
§ 744.397, Fla.Stat. (1987).
Section 744.421, Florida Statutes (1987), provides in pertinent part:
Any person dependent on the ward for support may petition for an order directing the guardian of the property to contribute to the support of the dependent person from the property of the ward. The court may enter an order for suitable support and education of the dependent person out of the ward’s property. The grant or denial of an order for support shall not preclude a further petition for increase, decrease, modification, or termination of allowance for support by either the petitioner or the guardian. The order for support shall be valid for payments made pursuant to it, but no valid payments can be made after the termination of the guardianship. ...
§ 744.421, Fla.Stat. (1987).