## BALDOMERO v BALDOMERO
### Case No. 87-43674 FC 10
Eleventh Judicial Circuit, Dade County
December 13, 1990

## OPINION OF THE COURT

MARGARITA ESQUIROZ, Circuit Judge.

*CORRECTED ORDER GRANTING PETITIONER/WIFE'S PETITION TO SET ASIDE PROPERTY SETTLEMENT AGREEMENT OR ALTERNATIVELY TO AWARD WIFE ONE-HALF OF VALUE OF CERTAIN ASSETS*

THIS CAUSE came on to be heard before me on May 14, 1990, on the petitioner/wife's petition to set aside property settlement agreement or, alternatively to award wife one-half of the value of certain assets, and on the respondent/husband's answer thereto. Having fully considered and evaluated the testimony and evidence presented, having had

the opportunity to observe the demeanor of the witnesses while testifying, having resolved conflicts in the evidence, and having heard argument by counsel for the respective parties, this court finds as follows:

1. This court entered a Final Judgment of Dissolution of Marriage on October 13, 1988, incorporating and approving a Separation and Marital Settlement Agreement entered into by the parties on October 12, 1988. The Wife's motion to Set Aside Property Settlement Agreement is targeted exclusively at Paragraph 6(g) of that agreement, by virtue of which the respondent/husband received full title to the business as part of his share of the marital assets, presumably equitably distributed by said instrument.

2. This court finds that the evidence supports the conclusion that the respondent/husband knew that the true value of his business, including land and stock, was far in excess of the $90,000.00-$95,000.00 figure at which he valued it during discovery, in his Financial Affidavit and in conversations with the wife, and that he failed to disclose to the wife, prior to execution of the Separation and Marital Settlement Agreement, the negotiations that culminated in the sale of the business to Vasilis Antzaklis for the total sum of $275,000.00. The parties executed the Marital Settlement Agreement on October 12, 1988, in reliance on all of said financial information. In listing the business as a marital asset in his Financial Affidavit of August 1988, the respondent/husband had the following to say:

> Stock in 2d Time Around—a small transmission repair shop owned by Husband solely in which he works 50-60 hours per week—the stock has no market—Husband has been unsuccessfully trying to sell the business for the past two (2) years. The business owns the real property at 1001 N.W. 17th Street which was purchased for $148,000.00 but today has a value of approximately $90,000.00-$95,000.00. In the last four (4) years the property value has dropped dramatically—property all around the business is empty and for sale. Husband owes $85,000.00 just on the mortgage of the business.

Respondent/Husband's Financial Affidavit, at pp. 3-4.

The court rejects as unworthy of belief the evidence presented during the respondent/husband's case that "This man [the buyer] came from heaven." The court notes that Mr. Antzaklis, who purchased the business for $275,000.00, testified that he made the offer to buy the business from the respondent/husband in the first week of November 1988 (or less than a month after the execution of the Marital Settlement Agreement on October 12, 1988), and admitted that he had had

discussions with the respondent/husband concerning the transaction prior to that time. The actual closing took place on February 6, 1990. Further, the court accepts the testimony of the wife and the witnesses who testified in her behalf, and rejects that of the husband and the witnesses who testified in his behalf, on this issue.

Hence, the court finds that prior to October 12, 1988, the respondent/husband knowingly understated the value of the business during discovery, in his financial affidavit, and in conversations with the wife, in order to defeat or substantially reduce the wife's share of the parties' marital assets, and that he knowingly failed to disclose to the wife that he was about to consummate a sales transaction covering the business (land and stock) for a purchase price which *tripled* the value that he had placed on it in his financial affidavit and in conversations with the wife.[1]

In *Casto v Casto,* 508 So.2d 330 (Fla. 1987), the supreme court recently revisited the principles governing the trial court's decision to vacate or modify a post-nuptial agreement. Essentially, the supreme court in *Casto* approved two separate grounds by which either spouse may challenge a marital agreement and have it vacated or modified. Focusing on the first ground endorsed by *Casto,* a spouse may set aside or modify a marital agreement by establishing that the agreement was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching. *Casto v Casto,* 508 So.2d at 333. This avenue has provided a traditional and fertile ground under Florida law by which parties to the marital relationship have successfully challenged marital agreements upon proper allegations and proof of fraud, misrepresentation, overreaching, or other forms of misconduct expressly recognized by the cases. *See e.g., Hitt v Hitt,* 535 So.2d 631 (Fla. 4th DCA 1988) (fraud and misrepresentation); *Berger v Berger,* 466 So.2d 1159 (Fla. 4th DCA 1985) (coercion and duress); *Paris v Paris,* 412 So.2d 952 (Fla. 1st DCA 1981) (fraud and misrepresentation); *Baker v Baker,* 394 So.2d 465 (Fla. 4th DCA 1981) (fraud and misrepresentation); *Bakshandeh v Bakshandeh,* 370 So.2d 417 (Fla. 3d DCA 1979) (coercion and duress); *Moss-Jacober v Moss,* 334 So.2d 89 (Fla. 3d DCA 1976) (overreaching); *Demaggio v Demaggio,* 317 SO.2d 848 (Fla. 2d DCA 1975) (fraud); *Kern v Kern,* 291 So.2d 210 (Fla. 4th DCA) *cert.*

---

[1] The fact that the wife was familiar with the business based on her prior work with its books and accounts, and that she otherwise had general knowledge of the business, does not persuade the undersigned to rule differently. Obviously, the wife did not know, and could not have known unless told, that the value of the business was as high as $275,000.00, as evidenced by the imminent and undisclosed sale to Antzaklis, of which she learned only later.

*denied,* 294 So.2d 657 (Fla. 1974) (misrepresentation). *See also Lanes v Lanes,* 454 SO.2d 782 (Fla. 4th DCA 1984) ("mistake" under Fla.R.Civ.P 1.540(b)).

It is this court's determination that Paragraph 6(g) of the Separation and Marital Settlement Agreement, by which the wife waived all right, title and interest in the husband's business, is unenforceable and invalid as it is the product of fraud, misrepresentation and overreaching on the part of the husband. Paragraph 6(g) of the Agreement is therefore set aside and vacated.[2]

In accordance with paragraph 32 of the Agreement, the remaining provisions thereof remain in full force and effect, and the court may adjust the equities to accomplish the intent of the parties in relation to any provision held unenforceable. In the Separation and Marital Settlement Agreement, the parties contracted for an equal and equitable distribution of their assets, it being the intention of the parties that each receive one-half of those assets. The assets were presumable thus equally divided, with the former husband receiving a fishing cabin with the net value of $32,500.00 approximately; proceeds from the sale of a boat with a net value of $3,000.00 approximately; real property located at 2745-47 and 2754 S.W. 24th Street, Miami, Florida, with the net value of $100,000.00 approximately; real property and stock in his business known as Second Time Around, Inc. d/b/a Allstate Transmissions with the presumed net value of $8,000.00, for total assets to the former husband of approximately $143,500.00. The former wife was to receive the marital residence with a net value of $95,000.00 approximately; her automobile with a net value of $600.00 approximately; personal property and furniture with a net value of $4,000.00 approximately; an apartment in Venezuela with a net value of $15,000.00 approximately; cash and payment of mortgage and taxes in the approximate amount of $23,000.00 and contribution toward her attorney's fees in the amount of $5,000.00 for total net assets to the former wife of approximately $142,600.00.

When, however, the figure of $188,000.00 (representing the Respondent/Husband's approximate net profit from the sale of the business

---

[2] The Separation and Marital Settlement Agreement entered into by the parties in this case contains a Partial Invalidity Clause which provides: "If any provision in this Agreement is held by a court of competent jurisdiction to be invalid, or unenforceable, the remaining provisions shall continue in full force and effect without being impaired or invalidated in any way; however, the court having jurisdiction may adjust the equities herein to accomplish the intent of [sic] the parties as to any provision held invalid or unenforceable." Separation and Marital Settlement Agreement, Paragraph 32, p. 17.

and land) is substituted for the lower figure at which the husband had valued the business prior to execution of the Agreement, the former husband ended up receiving approximately $323,500.00 out of total assets of $463,100.00, or approximately 70% of the assets, while the former wife received only approximately $142,600.00, or approximately 30% of the assets. The former husband now also claims that he has, subsequent to the Agreement's execution and after entry of the Final Judgment of Dissolution, re-purchased one-half (½) of the business which he sold, thereby again becoming a fifty percent owner of the transmission repair shop.

The parties have resolved the remaining issue dealing with child support for 4½ month old Gabriella. After the dissolution, the wife became pregnant with Gabriella and thereafter sued the former husband for paternity. The paternity action known as Case No. 89-45634 was consolidated with this post dissolution action in accordance with an Agreed Order entered by this court on May 4, 1990. The parties have stipulated that the former husband is the father of the child and they have further stipulated that the former husband shall pay the monthly sum of $374.00 to the former wife as child support for the minor child, Gabriella. Based on the foregoing findings of fact and conclusions of law,

IT IS ORDERED and ADJUDGED as follows:

(1) Paragraph 6(g) of the Separation and Marital Settlement Agreement entered into by the parties on October 12, 1988, is unenforceable and is hereby set aside and vacated. The remaining provisions of said Agreement are ratified and shall remain in full force and effect.

(2) The Petitioner/Wife shall receive one-half (½) of the net proceeds received by the Respondent/Husband from the sale of the business to Vasilis Antzaklis, in accordance with the figures appearing on the transaction's Closing Statement dated February 6, 1990 (Husband's Exhibit E in evidence), over and above the $8,000 net value earlier placed on the business by the husband. This court reserves jurisdiction to determine (a) the exact amount of such net proceeds, in the event that the parties are unable to agree, after examination of said Closing Statement, as to the exact figure representing such net proceeds, and (b) the manner of payment of such amount by the husband to the wife.

(3) The former husband shall pay to the former wife at her residential address, as child support for the parties' minor child, GABRIELLA, the sum of $374.00 per month beginning on the 1st day of September 1990, and continuing on each succeeding month until the

158

child reaches the age of majority. The former husband shall also pay to the former wife past child support in said monthly sum from the date of the child's birth, less temporary support payments previously made by the former husband. The court reserves jurisdiction to determine the amount of past child support due, in the event the parties are unable to agree on the exact amount due.

(4) This court further reserves jurisdiction to determine the former Wife's claim for costs and attorney's fee in both the paternity and post-dissolution actions.

(5) The Final Judgment for Dissolution of Marriage is modified only to the extent that this Order affects the Separation and Marital Settlement Agreement, and more specifically Paragraph 6(g) thereof. Otherwise, all provisions of the Final Judgment for Dissolution of Marriage and of the Separation and Marital Settlement Agreement are ratified and shall remain in full force and effect.

(6) The court reserves jurisdiction to enter such further orders as may be necessary to enforce this decree.

DONE and ORDERED in Chambers at Miami, Dade County, Florida, this 13th day of December, 1990.