# Third District Court of Appeal

## State of Florida

Opinion filed September 17, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0014
Lower Tribunal No. 20-2073
_____

**Mary Ann James de Holguin,**
Appellant,

vs.

**In Re: Rodrigo Ernesto Holguin Lourido, et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Holland & Knight LLP, and Adolfo Jimenez, Rebecca Plascencia, Katharine Menendez de la Cuesta, and Joshua Levenson, for appellant.

Shutts & Bowen LLP, and Ricky L. Polston (Tallahassee), Jamie B. Wasserman (Fort Lauderdale), Steven M. Ebner, and Julissa Rodriguez, for appellees.


Before LOGUE, LINDSEY, and BOKOR, JJ.

LINDSEY, J.

This appeal stems from a protracted and contentious probate dispute between Mary Ann James de Holguin, Rodrigo Holguin's (the "Decedent") second wife, and the Decedent's adult children (the "Children") from his first marriage.[1] Mary Ann appeals from an Order entering Final Summary Judgment in favor of the Children following cross-motions for summary judgment. The trial court determined that Mary Ann lacked standing to challenge the Decedent's Will because she executed an Antenuptial Agreement releasing all claims on the Estate, and the Will expressly omits Mary Ann as a beneficiary. We affirm because we agree that Mary Ann, as a matter of law, lacks standing to contest the Will.

## I. BACKGROUND

The underlying probate dispute involves, *inter alia*, a marital agreement containing an express release of all claims against the Decedent's property or estate. A brief history of the parties' marital history is therefore necessary. It is undisputed that in March 1965, the Decedent married his first wife in Illinois. The marriage was subsequently registered in Colombia, where they were citizens and resided. They had three children together. In May 1984, the parties obtained a final judgment of divorce in Florida. But their marriage remained registered in Colombia.

---

[1] Mary Ann and the Decedent have no children together.

The Decedent and Mary Ann, his second wife, have a complicated marital history. In June 1984, the Decedent and Mary Ann attempted to marry, but at that time, both the Decedent and Mary Ann were legally married to other people. It is undisputed that this first attempted marriage was not legally valid.

In June 1985, the Decedent and Mary Ann attempted to marry a second time. Mary Ann contends that this marriage was valid and that she and the Decedent were continuously married from 1985 until the Decedent's death in 2019. The Children assert that the second attempted marriage was not valid because the Decedent was still married to his first wife. This is supported by the unrefuted record, which shows that the Decedent did not obtain a divorce decree in Colombia from his first wife until April 1997. Moreover, the record also contains an October 1997 Colombian divorce decree, signed by both Mary Ann and the Decedent, declaring that the parties agree to end their June 1984 and June 1985 civil marriages.

Mary Ann and the Decedent would go on to marry a third time. But before doing so, they entered into an "Antenuptial Agreement" in August 1999. The Agreement states that the "parties plan to marry each other" and that the intent of the Agreement is to address all the property outside of Colombia "because of the contemplated marriage." The Agreement provides for the disposition of, among other things, a Key Biscayne condominium and

3

a Co-Op Apartment in New York.  The Agreement also contains a Release

Provision, which provides as follows:[2]

> 8. <u>Release</u>. Except as otherwise provided in this agreement, each party releases all claims or demands in the property or estate of the other, however and whenever acquired, including acquisitions in the future.

In November 1999, Mary Ann and the Decedent were legally married

in New York according to a City of New York Marriage Certificate in the

record before us.  This was their third and final marriage.

In June 2019, the Decedent executed his Florida Will, which concerns

"only [Decedent's] assets located in the State of Florida, and, if applicable,

elsewhere in the United States[.]"  The Will expressly excludes Mary Ann:

> Notwithstanding anything expressed or implied in this agreement to the contrary, I intentionally omit **Mary Ann James de Holguin** and her descendants as beneficiaries under this will.

In October 2019, approximately three months before the Decedent

died, Mary Ann and the Decedent executed a Memorandum of

Understanding (the "MOU"), which provides for the distribution of various

assets in Colombia and the United States.  The MOU also contains a

Release Provision:

---

[2] A separate September 1999 "Prenuptial Agreement" addresses the Colombian assets and contains a similar release provision.

Notwithstanding the preceding or anything to the contrary in this MoU and/or the prenuptial agreement, in any case each of the parties hereby reciprocally releases the other party from all and/or any claims over the marital partnership, community property claims, rights and/or interests under the laws of any jurisdiction, in relation to the properties held, either directly or indirectly, by the other party, as well as from any and all income or increases thereof.

In December 2019, the Decedent died in Colombia, survived by his three Children from his first marriage and Mary Ann. In June 2020, the lower court admitted the Decedent's Florida Will to probate.[3]

In September 2020, Mary Ann filed the Objection and Counter-Petition at issue in this appeal. In her two-count Counter-Petition, Mary Ann sought (I) to be appointed personal representative and (II) to invalidate the Will for undue influence based on an alleged romantic relationship between the Decedent and the attorney who prepared his Will. The Counter-Petition does

---

[3] Beyond the underlying probate action, the overall dispute also involves a probate action in Colombia (where most of the Decedent's assets are located), Mary Ann's federal action seeking discovery, Mary Ann's independent creditor action based on the 2019 MOU, and Mary Ann's 2024 equitable action based on alleged trusts. The Colombian probate proceedings are ongoing. Mary Ann's federal application for discovery was denied. In re Holguin, No. 20-23410-MC, 2020 WL 13140609 (S.D. Fla. Dec. 2, 2020), report and recommendation adopted sub nom., In re James de Holguin, No. CV 20-23410-MC-SCOLA, 2022 WL 951667 (S.D. Fla. Mar. 30, 2022). The trial court dismissed Mary Ann's independent creditor action for forum non conveniens. This Court affirmed in part and reversed in part. de Holguin v. Godin, 367 So. 3d 1286, 1287 (Fla. 3d DCA 2023). And Mary Ann's equitable action remains pending below.

not mention the August 1999 Antenuptial Agreement or the MOU, both of which provide for the disposition of assets outside of probate and contain provisions releasing all present and future claims in the property or the estate.

In November 2020, the Personal Representative[4] moved to dismiss Mary Ann's Objection and Counter-Petition. The Personal Representative argued that Mary Ann lacked standing because the properly drafted and executed Florida Will expressly omitted her. In her Response, Mary Ann argued that she had standing as a "disinherited spouse." The Response, like the Objection and Counter-Petition, failed to mention any of the agreements Mary Ann had voluntarily signed that contained express releases of all claims against the Estate. In Reply, the Personal Representative disputed that Mary Ann was a disinherited spouse and, in support, attached the 1999 Antenuptial Agreement. Following a hearing, the court entered a written order granting the Personal Representative's Motion to Dismiss based on the Antenuptial Agreement.

Mary Ann appealed the dismissal, and this Court reversed, holding that "at this stage in the proceedings . . . the trial court erred in going beyond the four corners of the counter-petition and its attachments to determine Mary

---

[4] The Personal Representative is Camila Holguin Godin, the Decedent's daughter.

Ann was without standing to object to the notice of administration and to file a counter-petition." de Holguin v. Godin, 359 So. 3d 1254, 1256–57 (Fla. 3d DCA 2023) (citations omitted).

On remand, the Children moved for summary judgment arguing that there was no genuine dispute of material fact that Mary Ann lacks standing to contest the Will because she repeatedly agreed to release all claims against the Estate. Mary Ann cross-moved for Summary Judgment. Rather than seeking to invalidate the Will, which was the relief she sought in her Objection and Counter-Petition, Mary Ann argued that under the Antenuptial Agreement and the MOU, she was entitled to the Key Biscayne condominium and the New York Co-Op. Additionally, in her Reply in support of her Cross-Motion for Summary Judgment, Mary Ann relied on two 2002 Trusts. She argued that the Trusts provided her with an interest in the Key Biscayne and New York properties.

After a hearing, the trial court entered a detailed, 27-page Final Order. The court granted the Children's Motion for Summary Judgment concluding that "there is no genuine issue of material fact that [Mary Ann] executed an Antenuptial Agreement, which contains a release provision and bars any claim to challenge Decedent's Florida Will." The trial court further concluded that "[Mary Ann] has not established that she will stand to gain if the Decedent's Florida Will is somehow invalidated because Colombian law

7

would control (as Decedent was a Colombian domiciliary and died in Colombia) and [Mary Ann] would not be entitled to an elective share under Florida law." The court also denied Mary Ann's Cross-Motion for Summary Judgment because her Counter Petition was brought as a Will challenge, and the relief she now seeks, an interest in two properties, should have been brought as a creditor claim.[5]

Mary Ann timely appealed.

## II. ANALYSIS

Our standard of review of an order granting final summary judgment is de novo. See, e.g., Jones v. Ervolino, 339 So. 3d 473, 474 (Fla. 3d DCA 2022). We apply the federal summary judgment standard adopted in Florida in 2021. See In re Amends. to Fla. R. of Civ. P. 1.510, 317 So. 3d 72 (Fla. 2021).

This case arises from cross-motions for summary judgment on Mary Ann's Objection and Counter-Petition in the underlying probate proceedings. The Objection and Counter-Petition sought to invalidate the Decedent's Florida Will. We first address the threshold issue of Mary Ann's standing to contest the Will. We then address Mary Ann's arguments raised in her

---

[5] The court also granted the Children's Motion to Strike scandalous allegations from Mary Ann's Counter-Petition. We affirm this ruling without further discussion.

8

Cross-Motion for Summary Judgment and on appeal, seeking to enforce certain alleged probate avoidance vehicles.

It is undisputed that in August 1999, Mary Ann signed an Antenuptial Agreement releasing all present and future claims in the Estate.[6] Such an agreement is authorized and enforceable under Florida law. See § 732.702, Fla. Stat. (2024) ("Waiver of spousal rights."). Mary Ann does not argue that the Agreement is invalid due to fraud, deceit, duress, coercion, misrepresentation, or overreaching, nor does she argue that the Agreement is unfair or unreasonable. See Casto v. Casto, 508 So. 2d 330 (Fla. 1987) (setting forth the grounds for invalidating a marital agreement).

Instead, Mary Ann argues the Agreement may or may not be enforceable depending on disputed material facts because it was entered into *after* she was married, and Colombian law prohibits ante-nuptial agreements. We reject this argument because the record conclusively shows that Mary Ann was not married when she signed the August 1999 Antenuptial Agreement. See In re Amends. to Fla. R. of Civ. P. 1.510, 317 So. 3d 72, 75–76 (Fla. 2021) ("Under our new rule, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

---

[6] Mary Ann also signed a September 1999 Prenuptial Agreement and a 2019 MOU with similar release provisions.

version of the facts for purposes of ruling on a motion for summary judgment.'" (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007))).

This is evident from the October 1997 Voluntary Divorce, signed by both Mary Ann and the Decedent. The document expressly states that the June 1984 marriage and the June 1985 marriage are ended. Moreover, the parties signed an August 1999 Antenuptial Agreement and a September 1999 Prenuptial Agreement, both of which make clear that the parties are not married and that the agreements are being entered into in contemplation of marriage.[7] Finally, the record contains a City of New York Marriage Certificate showing that the parties were married in November 1999.

Based on the record before us, the trial court did not err in determining that there is no genuine issue of material fact that Mary Ann lacks standing to contest the Will. The unrefuted record shows that Mary Ann signed valid and enforceable agreements before she was married, in which she agreed to release all present and future claims against the Estate. We therefore affirm summary judgment in favor of the Children.

In her Cross-Motion for Summary Judgment, Mary Ann argued that even if she has no standing to contest the Will, she should be entitled to an interest in Key Biscayne and New York properties based on various alleged

---

[7] We note that in Mary Ann's own Cross-Motion for Summary Judgment she argues that the August 1999 Antenuptial Agreement is valid.

10

probate avoidance vehicles. Mary Ann also makes this argument on appeal. But as the trial court correctly observed, this relief was never requested in Mary Ann's Objection and Counter-Petition.[8] Mary Ann only sought to invalidate the Will, be appointed as personal representative, and distribute the Estate's assets under the laws of intestacy. Accordingly, we affirm the trial court's denial of Mary Ann's Cross-Motion for Summary Judgment.

## III. CONCLUSION

Because Mary Ann lacks standing, as a matter of law, to contest the Will based on valid and enforceable agreements that she undisputedly signed, we affirm the trial court's entry of final summary judgment in favor of the Children.[9]

Affirmed.

---

[8] Mary Ann has separate pending actions in the trial court seeking to enforce these agreements. In October 2020, Mary Ann brought an independent creditor action under the MOU asserting her rights to these same properties (2020-002073—CP-02). In March 2024, Mary Ann filed an equitable action raising similar claims based on the two 2002 Trusts (2024-005442-CA-01).

[9] Mary Ann also challenges the trial court's order on fees and costs. This issue is not ripe for review because no amount has been awarded. See Yampol v. Turnberry Isle S. Condo. Ass'n, Inc., 250 So. 3d 835, 837 (Fla. 3d DCA 2018) ("An order granting entitlement to attorney's fees but not determining the amount of fees or costs is a non-final, non-appealable order, and such an order is subject to dismissal for lack of jurisdiction.").