779 So.2d 479 (2000)
Alex V. MACAR, Appellant,
v.
Vivian Webb MACAR, Appellee.
No. 2D98-3268.
District Court of Appeal of Florida, Second District.
November 3, 2000.
Peter James Hobson, Tampa, for Appellant.
Virginia R. Vetter, Tampa, for Appellee.
ALTENBERND, Acting Chief Judge.
Alex V. Macar appeals an order that set aside the financial provisions in a final judgment of dissolution of marriage from his former wife, Vivian Webb Macar. The trial court granted relief from the final judgment based upon the wife's allegations that the marital settlement agreement, upon which the judgment was based, was unfair and entered into without full financial disclosure. The trial court based its ruling upon the tests set forth in Casto v. Casto, 508 So.2d 330 (Fla.1987), which determine the validity of prenuptial or postnuptial agreements. Because a final judgment had been entered incorporating the Macars' agreement, this ruling amounted to a finding that the Casto tests apply even after a judgment is entered on the basis of a stipulation. We disagree. We reverse because the wife failed to establish a basis for relief from the final judgment as required *480 by Florida Rule of Civil Procedure 1.540.
The Macars married in 1986. The parties experienced marital difficulties as early as 1994, at which time the wife filed an action for dissolution. During the previous action, each party retained counsel and the wife employed George Snyder, an accountant, to review the parties' finances. The parties dismissed the action, however, and reconciled for a short period. In 1996, the parties permanently separated. On November 18, 1996, the wife filed the petition for dissolution in this case. From that date until October 17, 1997, the parties engaged in vigorous litigation. Each party sought custody of the three minor children. They disagreed on virtually all financial issues.
The parties exchanged discovery in preparation for trial. Both parties filed financial affidavits and made efforts to comply with mandatory disclosure. See Fla. Fam. L.R.P. 12.285. The wife reemployed Mr. Snyder to determine the standard of living during the marriage, the net worth of the parties, and the husband's ability to pay support. Mr. Snyder received many of the documents that the husband provided through disclosure and discovery and prepared a schedule of assets accordingly. There were numerous hearings on motions for temporary relief. At all times, both parties were represented by counsel.
The trial court set the case for trial on a mid-October 1997 docket. Approximately two months before trial, the wife fired her lawyer and filed a stipulation for substitution of counsel. The trial court warned the wife when it granted substitution that her new counsel would need to be prepared to begin trial in October. Both parties thereafter complied with a pretrial order by filing pretrial memoranda and witness and exhibit lists.
Four days prior to trial, the wife's new counsel, Donald McBath, requested a continuance and filed at least five other motions.[1] On the morning of the scheduled trial, the trial court addressed each motion, as well as two new motions the wife filed that morning.[2] Thereafter, the wife's counsel renewed his request for a continuance, arguing for the first time that he had not had sufficient time for discovery and trial preparation. The trial court denied the request and indicated that the trial would commence after the lunch hour.
When court reconvened, counsel for both parties announced to the trial court that they had reached an agreement on all issues. Counsel for the husband recited the terms of the agreement to the court. At some point during this process, the wife objected to a specific term, and the trial court recessed to allow the parties to resolve this remaining issue. When the parties returned, they modified the agreement to meet the wife's concern. In the modification, she was awarded a Corvette in exchange for a reduction of her lump sum rehabilitative alimony from $20,000 to $10,000.
Once the terms of the agreement were fully stated, the trial court and each party's counsel questioned the parties as to whether they agreed with these terms and whether they had entered into the agreement freely and voluntarily. Both parties indicated assent to the agreement. The wife did state that she felt she was getting "ruffled a bit," but concluded, "I'm taking it." At the end of this colloquy, the wife's counsel indicated that he had advised the wife against accepting this agreement, but she testified that she was accepting it despite his advice to the contrary. A final *481 judgment was entered on November 17, 1997, incorporating the settlement agreement. This final judgment designates the husband as the primary residential parent for the children and provides the agreed-upon lump sum rehabilitative alimony to the wife.[3] The wife's child support obligation is waived for two years. The judgment divides the family's modest marital assets between the two parties.
On May 8, 1998, a third attorney appeared for the wife and filed a motion for relief from judgment pursuant to rule 1.540 and Florida Family Law Rule of Procedure 12.540. The wife sought to set aside the judgment and alleged that the agreement upon which it was based was unfair, was a result of fraud, over-reaching, coercion or duress, and was entered into without the wife having knowledge of the parties' assets. The wife also alleged that there was newly discovered evidence that some of the brokerage accounts held by the husband might be at least partially marital in nature, though they were designated as nonmarital property by the parties' agreement.
At the hearing on the motion for relief from judgment, the wife testified to her general lack of knowledge regarding the parties' finances during the marriage. She explained that she had felt pressured to accept the settlement based upon the court's rulings the morning of trial. The wife then presented the testimony of her accountant, Mr. Snyder. Mr. Snyder explained that he had received documents reflecting the parties' finances through counsel for both parties as a result of the discovery process and had used them to prepare a schedule of assets. Although he was prepared to testify at trial, using this schedule, he was not present on the day trial was scheduled. The schedule Mr. Snyder prepared and the documents he reviewed suggested that the wife was entitled to a greater share of assets than she received from the settlement. This was in part because Mr. Snyder disagreed that certain accounts should be classified as the nonmarital property of the husband and in part because he had a more accurate list of the assets and their values than that included in the settlement agreement or listed on the husband's financial affidavit.
The wife argued that she did not have a full and fair financial disclosure despite the discovery which had taken place because of certain omissions or errors in that discovery. Specifically, the wife claimed that the husband mischaracterized three investment accounts as "nonmarital" on his financial affidavit. In fact, the wife and her accountant felt that at least some of the assets in these accounts were marital. Though the value of these particular accounts was listed at $25,000 each on the financial affidavit, the accountant found them to have a proper valuation of between $27,000 and $29,000 each. The husband also neglected to include on his financial affidavit a tax refund of $5,170 which he had received and applied to a nonmarital tax liability, stock certificates worth approximately $1,000, and an investment account in the children's names for which he was custodian. The wife also pointed out that the husband had failed to answer two questions in interrogatories and had not responded to a request to produce which requested any documents supporting any claim that an asset was nonmarital. The husband had, however, provided three years of documents on the disputed investment accounts. The wife had not sought to compel any additional discovery prior to trial.
After a lengthy evidentiary hearing, the trial court found that the agreed final judgment was not a result of coercion, but that it provided for the wife unfairly. The trial court then found that the wife had not been involved in the family finances and was thus unfamiliar with them, and that the husband had not made a complete disclosure given the errors in his financial affidavit. Thus, the trial court determined *482 that the financial portions of the agreement, including the financial portions of the final judgment based upon the agreement, should be set aside. The husband challenges this order on appeal.
The trial court focused on whether the postmarital settlement agreement should be set aside. See Casto, 508 So.2d 330. In Casto, the supreme court addressed the grounds upon which a marital settlement agreement, which was prepared prior to the commencement of litigation, could be set aside. Under Casto, an unfair marital settlement agreement raises a presumption that the spouse who was shortchanged lacked sufficient knowledge of the finances so as to make his or her assent to the agreement knowing and voluntary. This presumption may be rebutted, however, upon a showing that the shortchanged spouse had a general knowledge of the character and extent of the parties' assets and income or that the other spouse made a full financial disclosure.
In this case, however, the agreement was not executed prior to litigation. The Macars entered into this agreement after months of litigation, after the husband had substantially complied with discovery and disclosure requirements, and after the wife retained an accountant who had compiled documentation that accurately reflected the parties' finances. We note that although the wife's counsel had filed numerous motions just prior to the date of trial, none of them alleged any deficiency in discovery or mandatory disclosure. The parties litigated for almost a year while represented by counsel of their choice. Thus, this case is somewhat similar to Petracca v. Petracca, 706 So.2d 904 (Fla. 4th DCA 1998), which questioned whether a spouse can plausibly raise the adequacy of his or her knowledge after the parties have engaged in contentious litigation while each was represented by counsel. Petracca and Casto, however, each involved an agreement that the trial court had not incorporated into a final judgment at the time it was challenged.
Because the trial court in this case incorporated the agreement into a final judgment, the wife could obtain relief from that judgment only by direct appeal or pursuant to rule 1.540.[4] Rule 1.540 simply does not incorporate the Casto analysis for the setting aside of a marital agreement.
In this case, the only bases for relief under rule 1.540 that might arguably apply are those of fraud or newly discovered evidence. The trial court made no finding of fraud on the part of the husband. Rather, the trial court ruled that "mistakes" in the husband's financial affidavit made his financial disclosure incomplete. Indeed, the evidence presented did not suggest the husband had perpetrated a fraud upon the wife, given his substantial compliance with discovery and disclosure and the nature of the few mistakes or omissions alleged. In addition, the wife's accountant, her agent, had the information on the assets and their proper valuation information he said he compiled from documents produced by the parties. This suggests not only that there was no fraud, but also that the wife could have discovered, or did discover, the information by due diligence prior to the entry of the judgment. Thus, it was not newly discovered evidence. As a result, there was no basis upon which the trial court could grant relief from this judgment.
We recognize that in Goodstein v. Goodstein, 649 So.2d 273 (Fla. 3d DCA 1995), the Third District affirmed an order setting aside a property settlement agreement *483 on the grounds of overreaching and duress, even though the agreement was incorporated into a final judgment. Overreaching and duress are not grounds for relief from a judgment pursuant to rule 1.540. As a result, to the extent our holding cannot be reconciled with the holding of Goodstein, we certify conflict with that opinion.
Reversed and remanded for reinstatement of the final judgment of dissolution of marriage; conflict certified.
FULMER and WHATLEY, JJ., Concur.
NOTES
[1] Mr. McBath is not counsel for the wife in this appeal.
[2] Some of these motions accused the husband, for the first time, of abusive behavior toward the minor children. The trial court found these highly inflammatory allegations to be spurious and unfounded. This was the second time the trial court found the wife guilty of making unfounded allegations against the husband in an attempt to manipulate the judicial process.
[3] The wife alleged that Mr. McBath received the entirety of this benefit to pay his fees.
[4] The wife did file a timely appeal of the final judgment. Thereafter, this court granted her request to relinquish jurisdiction to the trial court to address her motion to set aside the judgment. Once the trial court granted that relief, the wife dismissed her appeal and the husband filed this appeal. Although it seems highly unlikely that the wife would have any other grounds to challenge the final judgment in a direct appeal, upon remand, the trial court is directed to reinstate that judgment. The wife may file a timely appeal of the reinstated judgment if circumstances not addressed in this appeal merit that action.