LEWIS, J.
We have for review Macar v. Macar, 779 So.2d 479 (Fla. 2d DCA 2000), based on certified conflict with Goodstein v. Goodstein, 649 So.2d 273 (Fla. 3d DCA 1995), addressing the issue of whether final judgments which incorporate marital settlement agreements achieved after commencement of litigation in marriage dissolution actions should be subject to challenges based on Casto v. Casto, 508 So.2d *709 330 (Fla.1987), or whether such challenges should be solely predicated on Florida Rule of Civil Procedure 1.540. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons detailed below, we conclude that challenges to these types of agreements, made after extensive litigation and discovery, should be controlled by rale 1.540. Thus, we approve the Second District’s decision in Macar and disapprove the Third District’s decision in Goodstein, to the extent that it is inconsistent with this opinion.
FACTS
Alex and Vivian Macar were married in 1986. On November 18, 1996, Ms. Macar filed a petition for dissolution.[1] From November 1996 until October 17, 1997, the parties engaged in discovery, filed financial affidavits, and made mandatory disclosures. At all times, both parties were represented by counsel. Ms. Macar also hired Mr. George Snyder, an accountant, to inventory the parties’ assets based on the discovery documents and disclosures. Snyder prepared a schedule of the parties’ assets, which he gave to Ms. Macar for use at trial.
Four days prior to trial, the wife requested a continuance and filed no fewer than five other motions. When the court convened for trial on the morning of October 17, 1997, the wife filed two more motions and renewed her request for a continuance. The trial court addressed and denied all of the wife’s motions. When the court reconvened for the trial to commence that afternoon, counsel for both parties announced that they had reached an agreement on all issues.[2] After all terms of the agreement were fully articulated, the trial court and both counsel asked each party whether they had agreed to the terms voluntarily. Both parties responded affirmatively.[3] On November 17, 1997, the trial court entered a final judgment which incorporated the October 17 settlement agreement as part of the judgment.
On May 8, 1998, the wife filed a motion for relief from judgment pursuant to Florida Rule of Civil Procedure 1.540 and Florida Family Law Rule of Procedure 12.540.[4] In her motion, the wife alleged that the settlement agreement as incorporated into the final judgment was unfair; that it was a result of the husband’s fraud, overreaching, coercion or duress; and that she had entered into the agreement without full knowledge of the parties’ assets. The wife also alleged that she had uncovered new evidence indicating that the husband had misrepresented the amount in three brokerage funds, and that the husband had misclassified those funds as nonmarital assets.
At the hearing on the wife’s motion, the wife asserted that during discovery the husband had not disclosed: (1) a tax refund of $5,170; (2) $1,000 in stock certificates; (3) an investment account in the *710 children’s names for which the husband was a custodian; (4) answers to two interrogatory questions; and (5) documents that the wife had requested supporting any claim the husband presented that any asset was nonmarital. The wife further contended that the husband had misclassified three brokerage accounts as nonmari-tal and erroneously listed the value of the three accounts at $25,000 each, when in fact the values ranged from $27,000 to $29,000.
After the evidentiary hearing, the trial court found that although there was no coercion, the terms of the agreement were unfair to the wife. The trial court relied upon and applied Casto’s elements for analysis, discussed infra, and ultimately set aside the property settlement agreement that had been incorporated into the initial final judgment. The trial court reasoned that the wife had not been involved in, or familiar with, the family’s finances, and the husband had not made a full and complete disclosure, given the errors in his financial affidavit. The husband sought review of that determination.
The Second District Court of Appeal reversed the trial court’s decision and remanded the case for reinstatement of the initial final judgment. Specifically, the district court determined that the trial court should not have applied the Casto analysis because Casto applies only to marital agreements entered into prior to litigation and entry of final judgment. The Second District also noted that the only avenues available for the wife to seek relief from the final judgment were through direct appeal or by motion pursuant to Florida Rule of Civil Procedure 1.540.[5] The district court applied the only possible rule 1.540 elements available to the wife for relief, “fraud” and “newly discovered evidence,” and held that the wife’s challenge to the final judgment failed. The Second District then certified conflict with Goodstein v. Goodstein, 649 So.2d 273 (Fla. 3d DCA 1995), which set aside a final judgment incorporating a marital property agreement reached after litigation based on Casto’s provisions for overreaching and duress.
ANALYSIS
In Casto, we considered the elements upon which a trial court could rely to set aside a postnuptial agreement. In doing so, we delineated the following parameters:
First, a spouse may set aside or modify an agreement by establishing that it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching.
The second ground to vacate a settlement agreement contains multiple elements. Initially, the challenging spouse must establish that the agreement makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties....
Once the claiming spouse establishes that the agreement is unreasonable, a presumption arises that there was either concealment by the defending spouse or a presumed lack of knowledge by the challenging spouse of the defending spouse’s finances at the time the agreement was reached. The burden then shifts to the defending spouse, who may *711 rebut these presumptions by showing that there was either (a) a full, frank disclosure to the challenging spouse by the defending spouse before the signing of the agreement relative to the value of all the marital property and the income of the parties, or (b) a general and approximate knowledge by the challenging spouse of the character and extent of the marital property sufficient to obtain a value by reasonable means, as well as a general knowledge of the income of the parties. The test in this regard is the adequacy of the challenging spouse’s knowledge at the time of the agreement and whether the challenging spouse is prejudiced by the lack of information.
Casto, 508 So.2d at 333 (citations omitted).
Thus, Casto dictates that a post-nuptial agreement may be set aside where there is a direct showing of fraud or overreaching by one party or, assuming the agreement was unreasonable or unfair, where the challenging party shows by un-rebutted presumption that he or she did not have adequate knowledge of the marital property at the time the agreement was entered into, or that the other party concealed assets. The Casto court qualified its reasoning by noting:
As reflected by the above principles, the fact that one party to the agreement apparently made a bad bargain is not a sufficient ground, by itself, to vacate or modify a settlement agreement.... A bad fiscal bargain that appears unreasonable can be knowledgeably entered into for reasons other than insufficient knowledge of assets and income. There may be a desire to leave the marriage for reasons unrelated to the parties’ fiscal position. If an agreement that is unreasonable is freely entered into, it is enforceable.
Id. at 334.
Critical to our analysis is the fact that the parties in Casto reached their postnuptial agreement one year before the husband had even filed the petition for dissolution of marriage. In Goodstein and Macar, however, the parties did not conclude their settlement agreements until after the marriage dissolution action was filed. The Macars had not only commenced litigation, but they had engaged in extensive discovery for an extended period before reaching their agreement. As a result, the Macar court disapproved the trial court’s extension of Casto, distinguishing Casto on the basis that Casto involved a simple postnuptial agreement concluded before the commencement of litigation, whereas Macar addressed a settlement agreement reached after the initiation of litigation and the completion of extensive discovery. See Macar, 779 So.2d at 482.
In developing the distinction between pre- and post-litigation agreements, the Macar court correctly, noted that “this case is somewhat similar to Petracca v. Petracca.” Id. at 482 (citing 706 So.2d 904 (Fla. 4th DCA 1998)). In Petracca, the parties involved in the dissolution action engaged in discovery for two years, with both parties being continuously represented by counsel. The wife also hired an accountant to assess the family finances. Two weeks before trial, the parties announced a settlement agreement. Before the court entered final judgment incorporating the agreement, the wife filed a motion to invalidate the agreement. Rejecting the wife’s argument that the Casto standards should apply, the Fourth District noted:
Because Casto really turns on the adequacy of the knowledge of the challenging spouse as a predicate for an unreasonableness challenge, it is restricted to those circumstances in which the adequacy of knowledge might plausibly be *712 raised. The adequacy of knowledge can be plausibly raised only when the agreement was reached by marital parties in conditions of mutual trust and confidence and who were, therefore, not dealing at arm’s length. The wife in this case attempts to imply that even when the parties are engaged in contested dissolution of marriage proceedings— when there has been ample opportunity for the party to make use of the procedural rules for discovery of financial resources — a party can still plausibly allege that they were dealing in mutual trust and confidence and not at arm’s length or from inadequate knowledge of finances.
... [But,] [o]nce the parties are involved in full fledged litigation over dissolution, property and support rights, they are necessarily dealing at arm’s length and without the special fiduciary relationship of unestranged marital parties .... [T]here can be no question of the adequacy of knowledge when an adversarial party has had the opportunity of financial discovery under the applicable rules of procedure. The Casto line of cases, therefore, logically has no application when the challenging spouse has had the benefit of litigation discovery through independently chosen counsel to learn the full nature and extent of the finances of the other spouse. The very purpose of litigation discovery is to unearth the other party’s assets and income.
Petracca, 706 So.2d at 911-12.
The Fifth District recently addressed Petracca’s distinction between pre- and post-litigation agreements in Crupi v. Crupi, 784 So.2d 611 (Fla. 5th DCA 2001). Crupi involved a wife’s attempt to set aside a mediated settlement agreement in a divorce action. The trial court denied the wife’s motion based on Casto, finding that the wife raised a presumption of concealment, which the husband rebutted. The district court stated:
The problem with the rationale of the trial court is that Casto involved a post-nuptial agreement. The agreement in this case is a mediated settlement agreement concluded through the expertise of a trained and certified mediator and in the course of a contested dissolution proceeding....
In Casto, the parties’ post-nuptial agreement preceded by approximately one year the husband’s first filing of a dissolution petition. The Mediated Settlement Agreement entered into in the instant case, in contrast, was entered into in the middle of a contested proceeding pursuant to court-ordered mediation. It was not made simply with the possibility of a future dissolution taking place but during the course of litigation, litigation in which both parties were represented by counsel and in which the usual rules of discovery apply. In such a context, we agree with the statement made by the Fourth District in Petracca v. Petracca that “The Casto line of cases ... logically has no application when the challenging spouse has had the benefit of litigation discovery through independently chosen counsel to learn the full nature and extent of the finances of the other spouse.”
Crupi, 784 So.2d at 612-13 (citations omitted). We agree with the reasoning of each district court in Macar, Petracca, and Crupi.
Our conclusion that Casto is inapplicable in these types of cases is based on the premise that Casto’s rationale assumes that the specific dissolution case has not proceeded to the procedural posture reached in Macar. That is, in deciding whether Casto or rule 1.540 should apply, our focus is on the fact that the challeng *713 ing party here was afforded an opportunity to engage extensively in the discovery process. In cases where the agreement is reached after the initiation of litigation and the completion of discovery, parties challenging final judgments should not be permitted to claim lack of knowledge, because through due diligence, they could have unearthed all relevant facts.[6]
Moreover, our conclusion is based on sound public policy, Ms. Macar’s assertions to the contrary notwithstanding. In support of her contention that Casto should apply, Ms. Macar refers to “the public policy of filing accurate financial affidavits” and “promoting the amicable settlement of disputes.” According to her reasoning, settlements — especially last-minute settlements “on the courthouse steps” — would be encouraged if Casto were adopted here. However, Ms. Macar presents no viable argument as to why application of the Casto analysis to expand the predicate for challenging final judgments would make settlements more likely or more fair. Indeed, her argument is centered upon encouraging last-minute settlements, which would be subject to easy challenge. If Casto were applied to final judgments entered after litigation and the completion of extensive discovery, settlements may be encouraged, but invariably, such settlements would be entered into with the knowledge, indeed, the expectation, that they could be rescinded. The incentive to file an action, impulsively settle, then challenge the settlement after final judgment would permit parties to manipulate the privileges of litigation, waste judicial resources, and compromise finality in these judgments.
CONCLUSION
We agree with the court below that rule 1.540, and not Casto, provides the framework for challenging settlement agreements entered into after the commencement of litigation and utilization of discovery procedures. As the district court accurately explained in Petraeca, Casto applies only to agreements entered into prior to litigation and discovery, because before spouses file for dissolution, they engage each other as fiduciaries and ás such, fraudulent behavior may be perpetrated more easily. After a legal action has been initiated, however, both parties may employ counsel to engage in the discovery process to disclose all assets and relevant factors. Given the benefits available in contested legal actions, an ex-spouse should not be permitted to challenge settlement agreements in final judgments under an umbrella as broadly based as those expressed in Casto. As voiced by the Second District below, the Fourth District in Petraeca, and the Fifth District in Crupi, the more narrow provisions of rule 1.540 present the more appropriate standards for challenging agreements entered into after litigation.[7] Applying rule 1.540 to the factual circumstances in this case, we agree with the district court below that the applicable standards do not afford a proper basis to provide Ms. Macar relief from the final judgment. See Macar, 779 So.2d at 482 (concluding that the only elements for relief under rule 1.540 applicable *714 to the case were “fraud” and “newly discovered evidence,” and that neither had been established by the wife).
Accordingly, we approve the reasoning of the district Court in Macar as to both the inapplicability of Casto to the circumstances in this case and as to its conclusion that rule 1.540 does not afford the wife a basis for relief. We disapprove the decision in Goodstein, to the extent that it is inconsistent with our decision today.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, and QUINCE, JJ., concur.
PARIENTE, J., concurs in result only with an opinion, in which ANSTEAD, J., concurs.

. Ms. Macar had previously filed a petition for dissolution in 1994. During that litigation, both parties retained counsel and Ms. Macar hired an accountant, George Snyder. That action was dismissed, however, and the parties reconciled until 1996, when they experienced further marital difficulty and permanently separated.

. At one point while counsel for the husband recited the terms of the agreement to the court, the wife objected to one specific term, and the court recessed to allow the parties to resolve that issue. The parties returned with a resolution, whereby the wife received a Corvette in return for a $10,000 reduction in lump sum alimony.

. The wife’s counsel later indicated that the wife accepted the agreement despite counsel’s advice to the contrary.

. The relevant portions of rule 12.540 are substantively identical to Rule 1.540.

. Rule 1.540 outlines the following bases for relief from final judgments: clerical mistake; mistake, inadvertence, surprise or excusable neglect; newly discovered evidence; and fraud, misrepresentation, or other misconduct by an adverse party. The rule also affords relief where the movant can establish that the judgment is void; has been satisfied, released, or discharged; was based on a prior judgment or decree which has been reversed or vacated; or is no longer equitable when applied prospectively.

. If, on the other hand, the parties were not afforded an opportunity to engage in discovery, Casto may become more applicable, because the chances of undetected asset concealment increase.

. We specifically note, however, that our decision today that Casto is inapplicable to this type of case is limited to cases which have attained the procedural posture of this case, i.e., cases where a contested action has been commenced and the parties have had the opportunity to obtain full disclosure through the various discovery mechanisms.