ON MOTION FOB REHEARING

CORTINAS, Judge.
We grant Appellee’s Motion for Rehearing, withdraw our previous opinion dated April 18, 2007, and issue this opinion in its place.
The Appellant, Osvaldo Romero (“Former Husband”), appeals from a trial court order granting his former wife, Aurora Romero (“Former Wife”), an interest in stock he purchased by exercising options he received from his employer and imposing a constructive trust on one-half of the options deemed to be marital assets, as well as an equitable lien on the Former Husband’s homestead property to satisfy the Former Wife’s interest.
The parties were married in 1990, and separated in 1998. A petition for dissolution of marriage was filed on July 20,1999. Months prior, the parties began negotiating how to divide their property and drafted a Marital Settlement Agreement (“MSA”) in January 1999. In fact, the MSA ultimately signed by the parties contained substantially the same property division as the January draft. On July 6, 1999, the Former Wife signed the MSA. On July 20, 1999, the Former Husband signed the MSA and completed a financial affidavit. The Former Wife completed her financial affidavit on September 23, 1999, and the judgment of dissolution of marriage, which incorporated the MSA, was entered on September 27,1999.
Almost three years after the entry of the final judgment of dissolution, the Former Husband petitioned to modify his child support obligations. As a result of his petition, the Former Wife became aware that the Former Husband had exercised certain stock options, which caused substantial increases in the income he declared on his 2000 federal income tax returns. The Former Wife then filed a counter-petition seeking to increase child support. Subsequently, the Former Wife amended her counter-petition to include a count seeking the imposition of a constructive trust, contending that the stock options and resulting stock were marital assets that the Former Husband failed to disclose on his financial affidavit and that she was entitled to a constructive trust on one-half of the options. Subsequently, both parties dismissed their actions seeking modification of child support and a hearing was held solely on the Former Wife’s petition to impose a constructive trust.
The stock options and resulting stock at issue were offered to the Former Husband when he obtained employment with Qtera corporation in March 1999. Specifically, the Former Husband received stock options to purchase 22,000 common shares of Qtera stock at ten (10) cents per share. These options were non-transferable and were contingent upon the Former Hus *335 band working at Qtera for one year. After one year of employment, twenty-five percent (25%) of the stock options would vest. The remaining stock options would vest l/48th per month for the following forty-eight (48) months. Thus, at the time the final judgment of dissolution was entered, the Former Husband’s stock options were non-vested and he owned no stock.
Further complicating matters, in December 1999, months before the Former Husband’s stock options vested, Qtera was acquired by Nortel, and Qtera stock was exchanged for Nortel stock at a rate of one share of Qtera stock for 1.335 shares of Nortel stock. Thus, in March 2000, when the Former Husband’s option to purchase the first twenty-five percent (25%) of the stock vested and was exercised, he received Nortel stock valued at $126 per share. The Former Husband continued to exercise his options to purchase stock, which vested monthly, through December 2000.[1] Based on advice from stock market experts, the Former Husband did not sell any of the stock he received. Ultimately, the price of Nortel stock drastically decreased and the Former Husband was left with worthless stock and tax liabilities.
At the hearing on her petition to impose a constructive trust, the Former Wife testified that she did not know the Former Husband had stock options in Qtera when she signed the MSA. She also testified that if she knew about the stock options, she “would have wanted half.” She further testified that if awarded half the stock options, she would have exercised all the options and then immediately sold the stock, using the proceeds of the sale to reduce the mortgage on her home. In addition, the Former Wife offered expert testimony as to the value of the stock resulting from the options, although her own expert opined that in July of 1999, the non-vested stock options could not be valued.
The trial court ultimately concluded that the options were marital assets because they were awarded to the Former Husband because of his past qualifications and experience.[2] As such, the trial court declared that the marital assets were subject to equitable distribution and adopted the valuations of the Former Wife’s expert witness. Specifically, the trial court concluded that “the most equitable division in this case would be based on a pro-rata basis, based on the percentage of the amount of time the Former Husband worked during the marriage at QTERA over the total time at QTERA needed to exercise each stock option.”
The trial court then found that the options vested for 126 days during the marriage[3] and that accordingly “the marital *336 value of the option to purchase 25% of the stock was 126/860 of the fair market value of the stock as of March 8, 2000, the day that option vested.” The trial court also considered the remaining stock options to have a marital component, as they too vested for 126 days during the marriage. The trial court then calculated that “the total marital value of such options was $577,528.38 and that the Former Wife would be entitled, under the facts of this case, to one half (1/2) of that amount, or $288,764.19.” The trial court reduced that sum by half the total cost of exercising the options and by the federal income taxes that the Former Wife would have paid at her tax rate on her share of the stock. Ultimately, the trial court concluded that the Former Husband was holding $197,856.92 in a constructive trust for the benefit of the Former Wife, and that an equitable lien should be imposed on the Former Husband’s homestead property because he used the Former Wife’s funds to reduce the mortgage on that property. The Former Husband appeals from that order.
Even assuming that the Former Wife’s petition was procedurally proper, we must reverse the trial court’s order because the Former Wife failed to establish a basis for relief from the final judgment. The trial court correctly recognized that the stock options contained a marital component. Non-vested rights, such as non-vested stock options, that accrue during the marriage are marital assets pursuant to section 61.075(5)(a)4, Florida Statutes (2005). As such, they are subject to equitable distribution. § 61.075(1), Fla. Stat. Therefore, had the Former Wife claimed a right to the stock at the time of dissolution, the non-vested stock options could have been assigned a future value at that time and Former Wife could have received that value either outright or in kind.[4] § 61.075(9), Fla. Stat.
The trial court accepted the Former Wife’s testimony that she had no knowledge of the stock options at that time. We cannot second-guess that credibility determination. However, the trial court then found that the Former Wife was entitled to relief based on the Former Husband’s failure to disclose the existence of his stock options in Qtera stock on his financial affidavit. This finding is insufficient, as a matter of law, to support granting relief from a final judgment.
Florida has a well-recognized policy favoring the finality of judgments, especially in family law contexts. See, e.g., D.F. v. Dep’t of Revenue ex rel. L.F., 823 So.2d 97, 100 (Fla.2002)(recognizing the need for finality of judgments and recognizing Rule 1.540 as the avenue by which to challenge final judgments of paternity); Parker v. Parker, 916 So.2d 926, 933-34 (Fla. 4th DCA 2005) (recognizing in a paternity dispute that “[mjany courts state there is an overriding need for finality of judgments in this area”) (citations omitted). “Once the litigation is terminated and the time for appeal has run, that action is concluded for all time.” Baker v. Baker, 920 So.2d *337 689, 692 (Fla. 2d DCA 2006). The only-exception to this “absolute finality” of final judgments is Florida Rule of Civil Procedure 1.540, which provides limited avenues by which a party can petition for relief from a final judgment. Id. (citation omitted). Specifically, Rule 1.540(b) provides that:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, decree, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) that the judgment or decree is void; or (5) that the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have been prospective application.
The Rule further states that: “[t]he motion [seeking relief from final judgment] shall be filed within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order, or proceeding was entered or taken.”
In 1992, the Florida Supreme Court amended Rule 1.540(b) to remove the one year time limit for motions alleging fraudulent financial affidavits. In re Amendments to Florida Rules of Civil Procedure, 604 So.2d 1110, 1111 (Fla.l992)(“In rule 1.540(b), Relief from Judgment, Decrees, or Orders, subdivision (b) is amended to remove the one year limitation for a motion based on fraud in financial affidavits used in marital cases.”). Were it not for this amendment to Rule 1.540, motions for relief from judgment based on fraudulent financial affidavits would be governed by the one year limitation. DeClaire v. Yohanan, 453 So.2d 375 (Fla.1984). Though originally contained within Rule 1.540(b), this language regarding fraudulent financial affidavits was then removed from Rule 1.540(b) and placed in Florida Family Law Rule of Procedure 12.540. See Cerniglia v. Cerniglia, 679 So.2d 1160, 1162 n. 2 (Fla.l996)(explaining that Rule 1.540(b) “was amended effective January 1,1993, to provide that ‘there shall be no time limit for motions based on fraudulent financial affidavits in marital cases.’ Upon the adoption of the Family Law Rules of Procedure in 1995, the amendment language was included in Family Law Rule of Procedure 12.540 ... ”). Florida Family Law Rule of Procedure 12.540 provides:
Florida Rules of Civil Procedure 1.540 shall govern general provisions concerning relief from judgment, decrees, or orders, except that there shall be no time limit for motions based on fraudulent financial affidavits in marital or paternity cases.
Given its history, it is clear that the purpose of Florida Family Law Rule 12.540 was not to establish an additional ground upon which to challenge a final judgment, but instead to remove the time limitation on an already existing ground. Thus, a motion made under Rule 12.540 must still establish a valid ground for setting aside the final judgment under Florida Rule of Civil Procedure 1.540. Clearly, the most applicable basis for seeking to set aside a final judgment under Rule 1.540 when dealing with allegations of a fraudulent financial affidavit is 1.540(b)(3). Macar v. Macar, 779 So.2d 479, 482 (Fla. 2d DCA 2000)(explaining that “the only bases for relief under rule 1.540 that might arguably apply” in a situation where the former *338 husband’s financial affidavit contained mistakes and omissions are fraud or newly-discovered evidence).[5] In fact, the Former Wife argued that her petition was intended as and understood by the parties and the trial court to be a Family Law Rule 12.540 motion and therefore was not an independent action alleging fraud on the court. Parker v. Parker, 950 So.2d 388, 392 (Fla.2007)(explaining that allegations of extrinsic fraud must be brought as an independent action).
We find that the trial court failed to make adequate findings to support his order granting relief on the basis of fraud. In fact, the trial court did not even find that a fraud had been committed. Here, the trial court’s finding that the Former Husband failed to disclose his Qtera stock options, which had not vested at the time of dissolution, is not analogous to a finding that the Former Husband submitted a fraudulent financial affidavit. See Macar v. Macar, 803 So.2d 707, 714-15 (Fla.2001)(agreeing with the Second District that, under the factual circumstances, mistakes and omissions from the husband’s financial affidavit did not constitute fraud so as to establish a basis for relief under Rule 1.540(b)). Without making a finding that the Former Wife satisfied one of the grounds of Rule 1.540(b), the trial court had no authority to award relief.[6] Baker, 920 So.2d at 692 (concluding that a trial court has no jurisdiction to adjudicate a motion seeking relief from judgment if a party is not entitled to relief under Rule 1.540).
Because the Former Wife failed to establish that she was entitled to relief, we reverse the trial court order in her favor and direct the trial court to reinstate the original property distribution.
Reversed and remanded with instructions.

. The Former Husband could have continued to exercise options beyond this date but did not.

. Because the trial court then divided the assets based on the amount of time the options vested during the marriage, this determination was not dispositive. In fact, the trial court further stated in its order:
Thus, even if the stock options were given for future performance, the Former Husband worked at QTERA for over four months during the marriage, which time was directly attributable to each stock option that vested during his employment (and is the prorata [sic] basis for the Court’s equitable distribution in this judgment).

.Section 61.075(6), Florida Statutes, requires a trial court to determine which assets are marital assets as of the earliest date that the parties either enter into a valid separation agreement or file a petition for dissolution of marriage. Although the trial court was correct to determine the number of days from when the options were granted until the petition for dissolution was filed, the trial court order incorrectly states that the petition for dissolution was filed on July 13, 1999. A review of the record indicates the petition was *336 signed by the Former Wife on July 13, 1999, but was actually filed with the clerk of court on July 20, 1999. The MSA was signed by the Former Wife on July 6, 1999 and the Former Husband on July 20, 1999. Thus, the relevant period of time, from March 8, 1999 until July 20, 1999, actually spanned 134 days, not 126 days. Given our disposition of this appeal, however, this calculation error is moot.

. In this situation, the trial court was not compelled to value the stock options as of July 20, 1999. See § 61.075(6), Fla. Stat.; Heslop v. Moore, 716 So.2d 276 (Fla. 3d DCA 1998). However, we will defer to the trial court's decision to do so as it is a fact-specific determination within the trial court's discretion. § 61.075(6), Fla. Stat.

. Neither party has addressed whether relief could be granted on the basis of newly discovered evidence.

. If the trial court did find fraud, the proper course of action would have been to set aside the final judgment and redistribute the marital assets. See Bane v. Bane. 775 So.2d 938. 941 (Fla.2000). A trial court cannot modify the property division in a final judgment, as the trial court attempted to do here. See Braswell v. Braswell, 881 So.2d 1193, 1199 (Fla. 3d DCA 2004); Langer v. Langer, 463 So.2d 429, 429 (Fla. 3d DCA 1985).