# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-1301
LT Case No. 2022-DR-10836

_____

JENNIFER MARTIN,

  Appellant,

  v.

CRAIG SATER,

  Appellee.

_____

On appeal from the Circuit Court for Brevard County.
Kathryn M. Speicher, Judge.

Elizabeth Siano Harris, of Harris Appellate Law Office, Mims, for
Appellant.

Curtis N. Flajole, of Curtis N. Flajole, P.A,, Rockledge, for
Appellee.

December 10, 2025

**EN BANC**

SOUD, J.

Appellant Jennifer Martin appeals the trial court's denial of
her verified motion to set aside marital settlement agreement,
which she filed after entry of the final judgment ratifying the
agreement, making it a part of the judgment, and dissolving her

marriage to Appellee Craig Sater. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A). We affirm because Martin failed to establish a legally sufficient basis to set aside the final judgment of dissolution of marriage under Florida Family Law Rule of Procedure 12.540. In reaching this decision, we recede from *Suppa v. Suppa*, 871 So. 2d 988 (Fla. 5th DCA 2004), which declined to apply Rule 12.540 under similar circumstances.

## I.

Martin and Sater separated after a more than 28-year marriage. During their marriage, Sater was a dentist, and Martin worked in the dental practice. Contemplating the immediate filing of a petition for dissolution of their marriage, the parties voluntarily attended numerous mediation sessions with a certified family law mediator who was an attorney and had been contacted by Martin to conduct the mediation. The result was a marital settlement agreement.[1]

Pertinent here, the parties agreed to the distribution of considerable marital assets, alimony, and other necessary considerations involved with dissolving the marriage. Regarding equitable distribution, the agreement included a detailed list and valuation of assets identifying the dental practice (and a related company), numerous properties, automobiles, and financial accounts the parties owned.

Just two days after the parties signed the agreement, Martin petitioned to dissolve the marriage. The trial court entered its uncontested final judgment of dissolution of marriage that ratified the marital settlement agreement and made it a part of the judgment.

Nearly nine months later, Martin filed her verified motion to set aside the marital settlement agreement, relying on *Casto v. Casto*, 508 So. 2d 330 (Fla. 1987). Martin claimed that during mediation of the parties' divorce, she remained "an emotional

---

[1] An addendum to the agreement that benefited Martin was later signed by the parties.

2

wreck" because her father died in June 2019, and she had to put down her dog. She also alleged Sater, who was "in full control of the finances," never provided financial disclosures and "provided misinformation" by telling her that the agreement "was the best she was going to get in Court and that she better sign or she was going to get nothing. If we go to Court, I guarantee you, I will get more than you." As a result of her state of mind, lack of financial disclosure, and the alleged misinformation from Sater, she asserted the agreement should be set aside as it was "patently unfair on its face and would shock the conscious [sic]."

Relying on *Casto*, the trial court denied the motion. Specifically, the trial judge found insufficient evidence that Sater engaged in "fraud, deceit, duress, coercion, misrepresentation, or overreaching" and that Martin "had a general knowledge and understanding of the Husband's business and its generated income" and she failed to show the agreement was unfair to her in its terms.

This appeal followed.

II.

In resolving this case, we first consider which law governs Martin's motion. Should the motion have been resolved under the dictates of *Casto*, or does Florida Family Law Rule of Procedure 12.540 drive the trial court's analysis? And we do so de novo. *See O'Hair v. O'Hair*, 396 So. 3d 630, 631 (Fla. 6th DCA 2024) (citing *Bosem v. Musa Holdings, Inc.*, 46 So. 3d 42, 44 (Fla. 2010)), *review denied*, No. SC2024-0853, 2024 WL 3515473 (Fla. July 24, 2024). Though the trial court's *Casto* analysis was consistent with our binding precedent in *Suppa*, we now conclude *Casto* does not apply. Rather, rule 12.540 governs.

A.

1.

At the outset, it is helpful to recall *Casto* and certain of its progeny. In *Casto*, the parties entered into a postnuptial agreement approximately one year prior to filing a dissolution action—when the parties were not contemplating divorce. *See*

3

*Casto*, 508 So. 2d at 332. After the husband filed his petition for dissolution of marriage, and *before* entry of final judgment, the wife successfully moved to set aside the postnuptial agreement. *See id.* Ultimately, the Florida Supreme Court held that a postnuptial agreement may be set aside if the challenging spouse establishes: (a) that the agreement "was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching"; or (b) "that the agreement makes an unfair or unreasonable provision for that spouse," and the defending spouse is not able to show either (i) full and frank disclosure regarding the assets and income of the parties or (ii) "a general and approximate knowledge [of the] challenging spouse" as to the character and extent of the marital property. *See id.* at 333.

Years later, the Florida Supreme Court addressed the applicability of the *Casto* analysis to a *post-judgment* challenge of a marital settlement agreement reached by counseled parties after the dissolution action was filed and the parties conducted discovery. *See Macar v. Macar*, 803 So. 2d 707, 711–13 (Fla. 2001). In this context, the Florida Supreme Court held,

> [R]ule 1.540, and not *Casto,* provides the framework for challenging settlement agreements entered into after the commencement of litigation and utilization of discovery procedures. . . . *Casto* applies only to agreements entered into prior to litigation and discovery, because before spouses file for dissolution, they engage each other as fiduciaries and as such, fraudulent behavior may be perpetrated more easily.

*Id.* at 713.[2]

Thereafter, we held in *Suppa* that the *Casto* analysis applied to a *post-judgment* challenge to a marital settlement agreement reached by parties (with the assistance of a paralegal) in

---

[2] At the time of *Macar*, rule 12.540 provided that Florida Rule of Civil Procedure 1.540 applied except that there was no time limit on claims of fraudulent financial affidavits in marital or paternity cases. *See* 803 So. 2d at 709 n.4; *see also Suppa*, 871 So. 2d at 989 n.1.

contemplation of an imminent petition for dissolution action, which was filed shortly thereafter. *See* 871 So. 2d at 988–90. Following a hearing on the petition, the trial court entered its "Final Judgment of Dissolution of Marriage with Marital Settlement Agreement." *See id.* at 988. Less than one month later the former wife moved to set aside the judgment, alleging fraud and misrepresentations by the former husband and her lack of adequate knowledge of her rights and financial resources of the marriage. *See id.* at 988–89. Relying on *Casto*, the trial court granted the motion and set aside the agreement. *See id.* at 989–90. We affirmed, stating, "[t]his case is controlled by *Casto*." *Id.* at 990.

Finally, in 2024 the Sixth District decided *O'Hair*, which is factually similar to both *Suppa* and the case *sub judice*. After twenty-eight years of marriage, the O'Hairs entered into a marital settlement agreement. *See O'Hair*, 396 So. 3d at 632. Shortly thereafter, the husband petitioned for simplified dissolution of marriage. *See id.* The trial court entered final judgment ratifying and incorporating the agreement. *See id.* More than ten years later, relying on *Casto*, the former wife moved to set aside the agreement, and the trial court, based on *Casto*, granted the motion. *See id.* The Sixth District reversed and remanded for further proceedings, concluding that "this case is not . . . governed by *Casto*." *See id.* at 633. Rather, the Sixth District concluded the trial court's decision must be determined under rule 12.540. *See id.*

2.

Rule 12.540 governs a party's motion seeking relief from a final judgment of dissolution of marriage. The rule provides five grounds upon which a movant may be granted relief from judgment. *See* Fla. Fam. L. R. P. 12.540(b).

Pertinent here, the rule allows a movant to timely seek relief from a final judgment when the adverse party engaged in "fraud . . . , misrepresentation, or other misconduct." *See* Fla. Fam. L. R. P. 12.540(b)(3). Importantly, the plain language of rule 12.540(b) provides no opportunity for relief from a final judgment based upon an alleged unfairness or unreasonableness of a marital settlement agreement incorporated thereby. Rather, relevant to the case before us, rule 12.540(b)(3) focuses entirely on the alleged conduct of the non-moving party and allows for relief from a final judgment

5

if the movant shows that the non-challenging spouse engaged in "fraud . . . , misrepresentation, or other misconduct."

B.

With this law in mind, we turn to this case. Martin's motion was governed by rule 12.540 because the final judgment dissolving the marriage and incorporating the marital settlement agreement was entered *before* she sought relief.

As the Sixth District succinctly concluded in *O'Hair*, "[w]hen a marital settlement agreement is incorporated into a judgment, relief from the agreement *requires relief from the judgment.*" 396 So. 3d at 631 (emphasis added). And when a party seeks relief from an agreement ratified and incorporated by a final judgment, she "must do so by seeking relief from the judgment, not the agreement." *Id.* at 632–33 (citing *Miller v. Preefer*, 1 So. 3d 1278, 1282 (Fla. 4th DCA 2009) ("Effectively, the trial court had incorporated the settlement agreement into its final judgment resolving the 1992 lawsuit. When it did, the settlement agreement, even though it contained an illegal covenant restraining trade, essentially became sheltered within the judgment. To undo the settlement agreement, or even just the covenant not to compete recited within it, Miller was required to undo the judgment itself.")).

We agree. The entry of a final judgment of dissolution of marriage is a terminal event in the litigation of the petition for dissolution of marriage. And once the time for appeal has run, it resolves "for all time" the substantive terms of the parties' divorce, as framed by the petition (and any counter petition). *See Miller v. Fortune Ins.*, 484 So. 2d 1221, 1223 (Fla. 1986).[3]

---

[3] Rule 12.540(b) is "substantively identical" to rule 1.540. *See Macar*, 803 So. 2d at 709 n.4. As a result, "motions filed under rule 12.540(b) are governed by the body of law applicable to rule 1.540(b)." *Shlimbaum v. Shlimbaum*, 394 So. 3d 1157, 1161 (Fla. 4th DCA 2024). *See also Gjokhila v. Seymour*, 349 So. 3d 496, 499 n.2 (Fla. 1st DCA 2022).

There is but one lone exception to "this absolute finality" wrought by entry of the final judgment—the "narrow range of circumstances" set forth in rule 12.540 that vests the trial court with jurisdiction to relieve a party from the judgment. *See id.*; *see also Bane v. Bane*, 775 So. 2d 938, 941 (Fla. 2000) (quoting *Miller*); *O'Hair*, 396 So. 3d at 632–33. And other than that provided by the rule, trial courts "have no authority" to vacate or modify the final judgment. *See Bigelow v. Ritsema*, 289 So. 3d 550, 551 (Fla. 5th DCA 2020) (holding that it is "a well-established rule that 'trial courts have no authority to alter, modify, or vacate a final judgment except as provided in Florida Rules of Civil Procedure 1.530 and 1.540' and Florida Family Law Rules of Procedure 12.530 and 12.540." (quoting *Levy v. Levy*, 900 So. 2d 737, 745 (Fla. 2d DCA 2005))).

Here, Martin and Sater entered into the marital settlement agreement after mediation—not as fiduciaries, but as parties soon to be legally adverse in an imminent dissolution action to effectuate their divorce. And the final judgment entered by the trial court ratified their agreement and made it a part of the final judgment. As a result, it is the final judgment, rather than the agreement, that possesses legal force and effect in providing the parties' respective rights and obligations. It is the final judgment by which the parties are bound—to which each party is entitled to enforcement and subjected to contempt for noncompliance. Therefore, Martin was required to seek relief from the final judgment itself, not the marital settlement agreement made a part thereof. *See O'Hair*, 396 So. 3d at 632–33. And there is only one path in Florida law by which she could seek such relief—that paved by rule 12.540. Outside of that "narrow" path, the trial court simply is without jurisdiction to vacate or modify the final judgment. *See Miller*, 484 So. 2d at 1223.

Therefore, the trial court's decision had to be considered under the provisions of rule 12.540—not *Casto*. In reaching this conclusion, we recede from our decision in *Suppa*.

## C.

Nonetheless, we affirm the trial court's denial of Martin's motion because the record makes clear that there is insufficient evidence to demonstrate any basis under rule 12.540 to vacate the final

judgment. *See Crupi v. Crupi*, 784 So. 2d 611, 612 (Fla. 5th DCA 2001). In denying the motion, the trial court found there was "no sufficient evidence to prove" that Sater engaged in "fraud, deceit, duress, coercion, misrepresentation, or overreaching." While couched in the vernacular of *Casto*, this finding addresses the grounds for relief available under rule 12.540(b)(3). And the trial court's findings in this regard are supported by the record before us.

## III.

As a result, we AFFIRM the trial court's order denying Martin's motion to set aside the marital settlement agreement. In doing so, and in light of the statement in *Macar* indicating that the *Casto* analysis applies only to agreements entered into prior to litigation and discovery, we certify to the Florida Supreme Court the following question as one of great public importance:

DOES *MACAR V. MACAR*, 803 SO. 2D 707 (FLA. 2001) REQUIRE THE TRIAL COURT TO APPLY FAMILY RULE 12.540 RATHER THAN THE "UNFAIRNESS TEST" OF *CASTO V. CASTO*, 508 SO. 2D 330 (FLA. 1987) TO THE RESOLUTION OF POST-JUDGMENT LITIGATION SEEKING TO SET ASIDE A MARITAL SETTLEMENT AGREEMENT—THAT WAS ENTERED INTO JUST PRIOR TO FILING FOR DIVORCE AND WITH THE SPECIFIC INTENT TO INCORPORATE IT INTO A FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE— WHERE THE PARTIES DID NOT ENGAGE IN FORMAL DISCOVERY OR LITIGATION BEFORE ENTRY OF FINAL JUDGMENT?

It is so ordered.


WALLIS, LAMBERT, EDWARDS, BOATWRIGHT, and MACIVER, JJ., concur.

MAKAR, J., concurs in result only with opinion.

EISNAUGLE, J., concurs in result with opinion in which KILBANE, J., concurs.

KILBANE, J., concurs in result with opinion in which Jay, C.J., concurs.

HARRIS, J., recused.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

MAKAR, J., concurring in result only.

The en banc court reaches the correct result, affirmance of the trial court's order denying the request to set aside the marital settlement agreement, but it does not appear necessary for the full court to have weighed in on this determination or overruled precedent. No direct conflict exists between *Suppa v. Suppa*, 871 So. 2d 988 (Fla. 5th DCA 2004), and the supreme court's decisions in *Macar v. Macar*, 803 So. 2d 707 (Fla. 2001), and *Casto v. Casto*, 508 So. 2d 330 (Fla. 1987). Admittedly, a gray area exists as the Sixth District seems to allude to in its footnote in *O'Hair v. O'Hair*, 396 So. 3d 630, 633 n.1 (Fla. 6th DCA 2024), *review denied*, No. SC2024-0853, 2024 WL 3515473 (Fla. July 24, 2024), but enough play exists in the jurisprudential joints for the case to be resolved on its facts without upending *Suppa*. That said, Judge Soud's opinion is a reasonable and thoughtful approach that creates a brighter line for litigants and judges to apply prospectively.

EISNAUGLE, J., concurring in result.

I agree that we must affirm because, whether we apply *Casto v. Casto*, 508 So. 2d 330 (Fla. 1987), or Florida Family Law Rule of Procedure 12.540, the order denying Martin's motion to set aside her marital settlement agreement is not in error. However, as I will briefly explain, I cannot join the portion of the majority's opinion receding from *Suppa v. Suppa*, 871 So. 2d 988 (Fla. 5th DCA 2004).

As a matter of first principles, I agree that our sister court's analysis in *O'Hair v. O'Hair*, 396 So. 3d 630, 632–33 (Fla. 6th DCA 2024), is correct. However, as I read the holdings in *Casto* and *Macar v. Macar*, 803 So. 2d 707 (Fla. 2001), I find no room to apply *O'Hair*. The decisional path in *Casto* rests on the reasonableness of the marital settlement agreement and, if unreasonable,[1] the challenging party's knowledge of the value of the marital property and income.[2] *Casto*, 508 So. 2d at 333. Although the agreement in

---

[1] "Once the claiming spouse establishes that the agreement is unreasonable, a presumption arises that there was either concealment by the defending spouse or a presumed lack of knowledge by the challenging spouse of the defending spouse's finances at the time the agreement was reached." *Casto*, 508 So. 2d at 333.

[2] "A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment." *Pedroza v. State*, 291 So. 3d 541, 547 (Fla. 2020) (quoting *State v. Yule*, 905 So. 2d 251, 259 n.10 (Fla. 2d DCA 2005) (Canady, J., specially concurring)).

*Casto* was not incorporated into a final judgment, the supreme court did not rely on that fact in reaching its disposition.

And while *Macar* limits *Casto*'s holding, it does not overrule *Casto*.[3] Instead, *Macar* merely instructs that rule 12.540 applies (in lieu of *Casto*) when an agreement is entered into after "extensive discovery." *Macar*, 803 So. 2d at 712–13 ("[O]ur focus is on the fact that the challenging party here was afforded an opportunity to engage extensively in the discovery process."). According to *Macar,* "*Casto* applies only to agreements entered into prior to litigation and discovery[.]" 803 So. 2d at 713. So, consistent with *Casto*, *Macar*'s decisional path employs rule 12.540 based on the opportunity for discovery—not on whether the agreement is incorporated into a final judgment.

In my view, the sixth district identified the correct analysis in *O'Hair*.[4] But given the supreme court's holdings in *Casto* and *Macar*, I conclude *O'Hair*'s analysis is unavailable to us. As a result, we have no opportunity to recede from *Suppa*.

KILBANE, J., concurs.

---

[3] In fact, *Macar* expressly limits its own holding and preserves the test announced in *Casto*. *Macar*, 803 So. 2d at 714 nn.6–7 ("[O]ur decision today that *Casto* is inapplicable to this type of case is limited to cases which have attained the procedural posture of this case, i.e., cases where a contested action has been commenced and the parties have had the opportunity to obtain full disclosure through the various discovery mechanisms.").

[4] Our supreme court should adopt *O'Hair*'s framework.

12

KILBANE, J., concurring in result.

I concur with the majority that Martin cannot establish grounds to set aside her marital settlement agreement under either Florida Family Law Rule of Procedure 12.540 or *Casto v. Casto*, 508 So. 2d 330 (Fla. 1987). I write separately because this case should not have been addressed en banc.

Below, the trial court denied Martin's motion to set aside her marital settlement agreement because she failed to satisfy the requirements of *Casto*. As the trial court properly declined to grant relief under *Casto*, we rightly affirm on this issue. *See State v. Wright*, 172 So. 3d 982, 983 (Fla. 5th DCA 2015) ("The primary function of the appellate court is to correct errors committed by the trial court."). That said, the decision to take the matter en banc to address the validity of *granting* relief under *Casto* in *Suppa v. Suppa*, 871 So. 2d 988 (Fla. 5th DCA 2004)—which is not controlling in this case—is unwarranted.[1] *See* Fla. R. App. P. 9.331(a) ("En banc hearings . . . *shall not* be ordered unless the case or issue is of exceptional importance or unless necessary to maintain uniformity in the court's decisions." (emphasis added)). Even so, *Suppa* was correctly decided because *Casto* remains

---

[1] Other than a mistaken belief that this case is bound by *Suppa*, the majority fails to explain why en banc review should have been ordered here. While this case poses a *question* of great public importance, the majority does not claim the case or issue rises to the level of "exceptional importance" demanding en banc consideration. *See R.C. v. Dep't of Agric. & Consumer Servs.*, 323 So. 3d 366, 367 (Fla. 1st DCA 2021) (Long, J., concurring in the denial of the motion for certification) ("The legal inquiry for exceptional importance differs from the decision to certify a question of great public importance. The purpose, procedural posture, and the inquiry itself contrast in significant ways.").

13

binding on this Court except as limited by *Macar v. Macar*, 803 So. 2d 707 (Fla. 2001).[2]

In *Casto*, the Florida Supreme Court identified two grounds under which a party may challenge a postnuptial agreement: (1) it was entered "under fraud, deceit, duress, coercion, misrepresentation, or overreaching" or (2) it was unfair or unreasonable with an unrebutted presumption of concealment or lack of knowledge regarding the parties' finances when executed. 508 So. 2d at 333; *see also Macar*, 803 So. 2d at 711 ("*Casto* dictates that a postnuptial agreement may be set aside where there is a direct showing of fraud or overreaching by one party or, assuming the agreement was unreasonable or unfair, where the challenging party shows by unrebutted presumption that he or she did not have adequate knowledge of the marital property at the time the agreement was entered into, or that the other party concealed assets."). Notably, the application of *Casto* hinges on the parties' position *when they entered the agreement*, if executed before litigation and discovery. *See Casto*, 508 So. 2d at 334 ("The critical test in determining the validity of marital agreements is whether there was fraud or overreaching on one side, or, assuming unreasonableness, whether the challenging spouse did not have adequate knowledge of the marital property and income of the parties *at the time the agreement was reached*." (emphasis added)); *see also Macar*, 803 So. 2d at 711–12 (distinguishing between pre- and post-litigation agreements).

---

[2] While I agree that a post-judgment challenge to an incorporated settlement agreement *should* be based on the applicable procedural rules for setting aside a judgment, the Florida Supreme Court limited *Casto*'s application only when the parties engaged in sufficient discovery prior to executing their settlement agreement. *See Macar*, 803 So. 2d at 714 n.7. Were that not the case I would fully agree with the majority and the Sixth District. *See O'Hair v. O'Hair*, 396 So. 3d 630, 632–33 (Fla. 6th DCA 2024) (declining to apply *Casto* and ruling relief could be obtained only by challenging judgment under rule 12.540 where agreement was incorporated into final judgment), *review denied*, No. SC2024-0853, 2024 WL 3515473 (Fla. July 24, 2024).

Even where such an agreement was incorporated into a final judgment and the petition to set aside the agreement was filed *after* entry of the judgment, the applicability of *Casto* was explicitly left open by the Florida Supreme Court.[3] *See Macar*, 803 So. 2d at 714 n.7 ("[O]ur decision today that *Casto* is inapplicable to this type of case is limited to cases which have attained the procedural posture of this case, i.e., cases where *a contested action has been commenced and the parties have had the opportunity to obtain full disclosure through the various discovery mechanisms*." (emphasis added)). *Compare id.* at 709 ("[W]e conclude that challenges to these types of agreements, *made after extensive litigation and discovery*, should be controlled by rule 1.540." (emphasis added)) *with id.* at 713 n.6 ("If, on the other hand, the parties were not afforded an opportunity to engage in discovery, *Casto* may become more applicable, because the chances of undetected asset concealment increase."). Consistent with the door left open in *Macar*, this Court affirmed a final judgment setting aside an agreement in such circumstances based on *Casto*. *See Suppa*, 871 So. 2d at 990.

In *Suppa*, the parties executed a marital settlement agreement before the dissolution petition was filed. *Id.* at 988. The agreement was ratified by the trial court in the "Final Judgment of Dissolution of Marriage with Marital Settlement Agreement." *Id.* After obtaining counsel, the former wife moved to set aside the final judgment and settlement agreement under

---

[3] Whether a party may challenge an agreement by invoking *Casto* is based on the timing of the agreement's execution (pre- or post-litigation/discovery) rather than the filing of the petition challenging the agreement (pre- or post-judgment). *See Casto*, 508 So. 2d at 332 (permitting challenge where parties entered agreement *before* filing dissolution petition); *Macar*, 803 So. 2d at 711 ("Critical to our analysis is the fact that the parties in *Casto* reached their postnuptial agreement one year *before* the husband had even filed the petition for dissolution of marriage."); *see also Suppa*, 871 So. 2d at 988 (applying *Casto* where agreement was executed *before* filing dissolution petition or engaging in discovery). Thus, for so long as *Casto* is viable, the majority's focus on the post-judgment posture of the challenge is misplaced.

15

Florida Rule of Civil Procedure 1.540.[4]  *Id.*  The court granted the motion based on the unfairness of the agreement, the former husband's lack of disclosure, and the former wife's lack of understanding, relying on *Casto*.  *Id.*  at 987–90.  Believing it to be unnecessary under *Casto,* the trial court explicitly declined to reach fraud.  *Id.* at 990.  The former husband objected, asserting the former wife's motion only alleged fraud or duress.  *Id.*  Yet the trial court found she had alleged a lack of knowledge in her motion and allowed the motion to be amended to conform to the evidence before ultimately setting aside the agreement.  *Id.*

On appeal, the former husband raised one single issue: "[the former wife] had only alleged fraud in her rule 1.540 motion, and so granting relief on *any other basis* was not permissible."  *Id.* at 990 (emphasis added).  This Court affirmed finding the wife had initially alleged a lack of financial disclosure and the trial court did not abuse its discretion in allowing the motion to be amended.  *Id.*  This Court then stated the matter was "controlled by *Casto*" because the "trial court expressly found that this was not an arms' length negotiation and that Wife did not know her rights."  *Id.*

Because of the continuing applicability of *Casto*—as limited by *Macar*—*Suppa* was not erroneously decided.  Thus, en banc review is not appropriate because there is not an issue of decisional uniformity nor is this a case of "exceptional importance."  *See* Fla. R. App. P. 9.331(a).  The majority does not explain its reasoning for ruling otherwise.

If we were writing on a blank slate, I would agree these post-judgment issues should be governed by procedural rules—here rule 12.540—irrespective of the posture of the parties when the settlement agreement was executed.  But unfortunately, that is not the current state of the law.  As it is, en banc review is unnecessary.

JAY, C.J., concurs.

---

[4] At the time, Florida Family Law Rule 12.540 provided for relief from judgment under Florida Rule of Civil Procedure 1.540. *See Suppa*, 871 So. 2d at 989 n.1.